[No. 12952-3-II. Division Two. October 30, 1991.]

ALLSTATE INSURANCE COMPANY, *Respondent*, v. BAHMAN DEJBOD, *Appellant*.

*Philip H. DeTurk,* for appellant.

*W. Wallace Cavanagh, Kendall H. Moore,* and *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim,* for respondent.

MORGAN, J. — Bahman Dejbod appeals from a declaratory judgment in favor of Allstate Insurance Company. We modify the judgment entered below.

On the morning of February 14, 1986, vehicles driven by Dejbod and Gilven were proceeding in opposite directions when they collided. A third vehicle, driven by Church, then collided with the other two.

Gilven was insured by PEMCO, with liability limits of $25,000. Coincidentally, Church was also insured by PEMCO, but with liability limits of $100,000. Dejbod was insured through Allstate. His policy included underinsured motorist (UIM) coverage and provided that any dispute between him and Allstate would be resolved by arbitration.

Dejbod sued Gilven and Church. Before trial, he settled with Gilven for $25,000, her policy limits. On the first day of trial, he settled with Church for $11,000. He then made a UIM claim against Allstate and demanded that it arbitrate. Allstate agreed, but only on condition that its liability be limited to that amount by which Dejbod's compensable damages exceeded $125,000. Allstate reasoned that both Gilven's and Church's policies were "applicable" within the meaning of RCW 48.22.030(1), and that it was therefore entitled to subtract the sum of the limits of the two policies from whatever amount of damages Dejbod proved at the arbitration.

Dejbod disputed Allstate's proposed condition and asserted that Allstate was liable for his damages in excess of $36,000. He reasoned that Allstate was only entitled to subtract the sum of the payments that he had actually received from the carriers for Gilven and Church.

Allstate then filed this declaratory judgment action to determine what amount should be offset against any

arbitration award that might be made. Cross motions for summary judgment were made, and the trial court granted Allstate's while denying Dejbod's. Dejbod appealed.

RCW 48.22.030(2) mandates UIM insurance, subject to certain exceptions. It provides in part:

> No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage, suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles, . . . because of bodily injury, death, or property damage, resulting therefrom . . ..

RCW 48.22.030(1) defines when a motor vehicle will be considered underinsured. It provides:

> "Underinsured motor vehicle" means a motor vehicle with respect to the ownership, maintenance, or use of which either no bodily injury or property damage liability bond or insurance policy applies at the time of an accident, or with respect to which the sum of the limits of liability under all bodily injury or property damage liability bonds and insurance policies applicable to a covered person after an accident is less than the applicable damages which the covered person is legally entitled to recover.

In this opinion, the "covered person" will be referred to as the claimant.

A fundamental policy underlying UIM is full compensation for those injured in automobile accidents. *Hamilton v. Farmers Ins. Co.*, 107 Wn.2d 721, 727, 731, 735, 733 P.2d 213 (1987); *Elovich v. Nationwide Ins. Co.*, 104 Wn.2d 543, 550, 707 P.2d 1319 (1985); *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 530-31, 707 P.2d 125 (1985); *Tissell v. Liberty Mut. Ins. Co.*, 115 Wn.2d 107, 111, 795 P.2d 126 (1990) (Dore, J., speaking for two members of the court). This statement, however, is ambiguous. It might mean that the purpose is full compensation for all injuries, or it might mean that the purpose is full compensation for all amounts that a claimant is legally entitled to collect from others.

The two meanings are significantly different. Suppose, for example, a case in which a tortfeasor's negligence proximately causes 60 percent of the claimant's damages, and the claimant's own negligence proximately causes 40 percent of the damages. If the purpose of UIM insurance is to compensate for the claimant's injuries, the UIM carrier should pay 100 percent less applicable liability insurance; but if the purpose is to fully compensate for amounts that the claimant is legally entitled to recover from others, the UIM carrier should pay 60 percent less applicable liability insurance.

The second meaning is the true one. Subject to certain modifications that have occurred over the years, *see, e.g.*, R. Keeton & A. Widiss, *Insurance Law* § 4.8(b) (1988), both liability and UIM insurance are contracts of indemnity. *Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 87, 794 P.2d 1259 (1990) ("UIM insurance provides a source of indemnification"); *Tissell v. Liberty Mut. Ins. Co.*, 115 Wn.2d at 120 (Callow, C.J., concurring) (same); R. Keeton & A. Widiss §§ 4.8(b), 4.9(e)(3) (liability insurance); 2 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 41.1(b) (2d ed. 1990) (injured person "may be entitled to indemnification" from liability and UIM insurance). Generally, automobile liability insurance is a contract by which the liability insurer, as indemnitor, agrees to indemnify its insured, the potential tortfeasor/indemnitee, against liability to third party claimants. Black's Law Dictionary 915 (6th ed. 1990). Generally, UIM insurance is a contract in which the UIM insurer, as indemnitor, agrees to indemnify its insured, the claimant/indemnitee, against loss which the insured is legally entitled to recover from third party tortfeasors. *See Blackburn v. Safeco Ins. Co.*, 115 Wn.2d at 87 (purpose of UIM coverage is to allow injured person to recover from responsible party). Although the two types of insurance are dissimilar with respect to the identity of the indemnitor —

in the one case, the liability insurer, in the other, the UIM insurer — they are similar in that each indemnitor, subject to various exceptions, undertakes a duty to pay that extends no farther than the legal liability of the involved tortfeasors, if any. Thus, when it is said that the purpose of liability and UIM insurance is "full compensation for the victims of auto accidents", what is meant is that liability and UIM insurance, working together, are intended to fully compensate claimants for those amounts that they are legally entitled to recover from liable tortfeasors, up to the sum of applicable liability and UIM limits. *See Tissell v. Liberty Mut. Ins. Co.*, 115 Wn.2d at 120 (Callow, C.J., concurring); *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d at 531.

That the second meaning is the true one is confirmed by both statutes and case law. In RCW 48.22.030(2), the Legislature mandated UIM coverage for the protection of persons "who are legally entitled to recover damages from owners or operators of underinsured motor vehicles". In RCW 48.22-.030(1), the Legislature defined a UIM claimant's "applicable damages" as those that he or she "is legally entitled to recover." And in *Blackburn v. Safeco Ins. Co.*, 115 Wn.2d at 87, the Supreme Court said:

> We have construed the purpose of the [UIM] statute as allowing an injured party to recover those damages which the injured party would have received had the responsible party been insured with liability limits as broad as the injured party's statutorily mandated underinsured motorist coverage limits.

*Hamilton v. Farmers Ins. Co.*, 107 Wn.2d at 727 (quoting *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d at 531); *see also Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d at 522-23 (UIM insurance); *Romanick v. Aetna Cas. & Sur. Co.*, 59 Wn. App. 53, 58, 795 P.2d 728 (1990); *Gaddis v. Safeco Ins. Co.*, 58 Wn. App. 537, 541, 794 P.2d 533, *review denied*, 115 Wn.2d 1029 (1990); 8C J. Appleman, *Insurance* 307-17 (1981).

■ A second fundamental policy underlying UIM is that liability insurance is primary, while UIM insurance is secondary. *Tissell v. Liberty Mut. Ins. Co.*, 115 Wn.2d at 120 (Callow, C.J., concurring) (UIM insurance is "second" layer of coverage); *Blackburn v. Safeco Ins. Co.*, 115 Wn.2d at 88 (UIM insurance is layer of "excess" coverage). The intent is that UIM insurance supplement but not supplant liability insurance.

With these statutes and policies in mind, we turn now to the two primary questions in this case. (1) After an accident, what liability policies are "applicable" to a UIM claimant within the meaning of RCW 48.22.030(1)? (2) When a liability policy is "applicable", to what extent is it applicable?

I

RCW 48.22.030(1) obligates a UIM carrier to pay (1) a claimant's legally recoverable ("applicable") damages or UIM limits, whichever is less, minus (2) "the sum of the limits of liability under all bodily injury or property damage liability bonds and insurance policies applicable to a covered person after an accident". The dispute between Dejbod and Allstate concerns (2), the amount a UIM carrier is entitled to subtract from the claimant's legally recoverable damages.

Preliminarily, we note that it is unnecessary to consider how much a UIM carrier can subtract unless at least one tortfeasor is liable to the UIM claimant. If there is no liable tortfeasor, the UIM claimant has no legally recoverable damages, and there is no need to consider how much the UIM carrier should be allowed to subtract from such damages.[1]

Whether a UIM insurer can subtract a liability policy pursuant to RCW 48.22.030(1) depends on whether the claimant, if he or she diligently pursued the claim against the liability insured to final adjudication, could legally

---

[1] In *Hamilton v. Farmers Ins. Co.*, 107 Wn.2d 721, 726-27, 733 P.2d 213 (1987), the same idea was recognized in slightly different form. There, the Supreme Court held that a "condition" to successfully claiming against a UIM policy is that the UIM claimant "be legally entitled to recover damages".

require the liability insurer to pay. Although there might be other reasons why the claimant could not require the liability insurer to pay — *e.g.*, the liability insured's lack of coverage, *cf. Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 801 P.2d 207 (1990), or the liability insurer's insolvency, *see* RCW 48.22.040(1) — the only reason arguably present in this case is the nonliability of the alleged tortfeasors, Church and Gilven. Therefore, we limit our discussion to that reason.

A UIM insurer can subtract a liability policy pursuant to RCW 48.22.030(1) if the person insured by the liability policy is liable to the injured claimant and there is no other reason why the injured claimant could not legally recover from the liability carrier. To so hold is consonant with the purposes of UIM insurance, for if the claimant diligently pursues the claim, he or she will be fully compensated, by a combination of payments from the liability and UIM carriers, for all amounts that he or she is legally entitled to recover from others, up to a maximum of the sum of applicable liability and UIM policy limits. To hold otherwise would vest the UIM claimant with the option of making the UIM carrier the primary rather than secondary indemnitor, in contravention of the desired primary/secondary relationship between carriers, for it would allow the UIM claimant to lawfully demand that the UIM carrier pay damages covered by the liability policy as well as damages in excess of it.

A UIM insurer cannot subtract a liability policy pursuant to RCW 48.22.030(1) if the person insured by the liability policy is not liable to the injured claimant. To allow a UIM insurer to subtract a liability policy is to excuse it from paying that part of the injured person's claim that the liability policy should pay. But the liability policy need not pay anything if the liability insured is not liable. Therefore, when a liability insured is not liable, there is nothing that the UIM carrier should be excused from paying due to the existence of that insured's liability policy.

██ The fact that a liability carrier voluntarily settles with or pays an injured claimant does not, without more, establish that the carrier's insured is liable to the claimant, or that the insured's liability policy is "applicable" to the claimant within the meaning of RCW 48.22.030(1). Settlements and payments are often made for reasons only tangentially related to the liability of the insured, *see* 2 A. Widiss, *Uninsured and Underinsured Motorist Insurance* 126 (2d ed. 1990), including avoidance of the costs of litigation, and they are not equivalent to an adjudication of liability through litigation or arbitration. Without more, they do not establish the liability of the person on whose behalf payment is made. *Cf. Bordeaux v. Ingersoll Rand Co.*, 71 Wn.2d 392, 396, 429 P.2d 207 (1967) (elements of res judicata not met by mere payment); *Rains v. State*, 100 Wn.2d 660, 665, 674 P.2d 165 (1983) (same regarding collateral estoppel); 60 Am. Jur. 2d *Payment* § 138 (1987) (part payment leaves payor with right to deny liability as to balance).

## II

Once it is determined that a liability policy is "applicable" within the meaning of RCW 48.22.030(1), to what extent is it applicable? The overriding principle is the same as before: A liability policy is applicable to the extent that the claimant, if he or she diligently pursued the claim to final adjudication, could legally require the liability insurer to pay.

Two different comparisons are relevant here. First is a comparison of the limits of the liability policy with the amount, if any, paid by the liability carrier in order to settle the claim against its liability insured. Second is a comparison of the stated limits of the liability policy with the maximum amount legally available to the UIM claimant under that policy. We consider each comparison separately.

## A

██ Once "applicable" within the meaning of RCW 48.22.030(1), a liability policy is applicable to the extent of

its limits, and not merely to the extent of whatever payment the liability insurer negotiated with the injured claimant.[2] RCW 48.22.030(1) expressly allows the UIM carrier to subtract "the sum of the limits" of applicable liability policies. And in *Hamilton v. Farmers Ins. Co.*, 107 Wn.2d at 727-28, the Supreme Court said:

> Whether the injured insured obtains full recovery of the tortfeasor's liability insurance limits is irrelevant to the determination of underinsurance payments. Underinsured motorist coverage allows the injured insured to recover payment from the underinsurer when the "sum of the limits of liability under all . . . insurance policies . . . is less than the applicable damages which the covered person is legally entitled to recover." RCW 48.22.030(1). The effect of this provision was correctly stated in a recent opinion of the Attorney General:
>
> > If an injured insured settles his claim with the tortfeasor's liability insurer for less than the policy limits, the "underinsured motorist" carrier is entitled to compute its payments to the injured insured as though the policy limits had been paid.
>
> AGO 13 (1981), at 19. . . . In other words, the underinsurer always is allowed to credit the full amount of the tortfeasor's liability coverage against the insured's damages.[3]

**B**

RCW 48.22.030(1) authorizes a UIM carrier to subtract from UIM limits or the claimant's legally recoverable damages, whichever is less, the "sum of the limits of liability under all . . . liability . . . policies applicable to a covered person after an accident . . .." In so doing, however, it is ambiguous. It could mean that the UIM carrier can

---

[2]The reasons for this rule are the same as those already stated in section I. It gives the claimant an opportunity to be fully compensated for legally recoverable damages, for if he or she diligently pursues the claim to final adjudication, he or she will recover all damages, up to the sum of applicable liability and UIM policy limits. Additionally, it precludes a UIM claimant and liability insurer from using a negotiated settlement for less than policy limits as a means of involuntarily converting a UIM carrier from secondary to primary indemnitor with respect to damages that exceed the settlement but are less than liability policy limits.

[3]*Hamilton v. Farmers Ins. Co., supra*, seems contrary to, and ignores, some of the language in the earlier case of *Elovich v. Nationwide Ins. Co.*, 104 Wn.2d 543, 707 P.2d 1319 (1985).

always subtract the limits stated in the policy, or it could mean that the UIM carrier can subtract the limits that the injured claimant will be able to recover from the policy if he or she succeeds in proving damages that exceed the policy's stated limits.

 The two meanings are often but not always the same. For example, if there are two claimants against a single tortfeasor who has liability limits of $100,000, and the liability insurer has already paid $50,000 to the first claimant, the stated limits of the policy may be $100,000, but the limits legally available to the second claimant are only $50,000. *See Del Toro v. Allstate Ins. Co.*, 360 So. 2d 432 (Fla. Dist. Ct. App. 1978); *State Farm Mut. Auto. Ins. Co. v. Diem*, 358 So. 2d 39 (Fla. Dist. Ct. App. 1978). For another example, if there is one claimant against a single tortfeasor with liability limits of $100,000, but the tortfeasor's liability insurer has been adjudicated insolvent with no assets available to pay claims, the stated limits of the policy may be $100,000, but the limits legally available to the claimant will be zero. *See* RCW 48.22.040. For a third example, if there is one claimant against two tortfeasors, each of whom has a liability policy with limits of $100,000, the combined stated limits may be $200,000, but the limits legally available to pay the claimant will vary according to whether the liability of the tortfeasors is joint and several, or several only. If the two tortfeasors are jointly and severally liable, the liability insurer of each tortfeasor will be responsible for damages attributable to the other tortfeasor, as well as for damages attributable to its own insured, and the liability limits legally available to the claimant will be $200,000. If the two tortfeasors are liable severally but not jointly, the liability insurer of each will be responsible only for damages attributable to its own insured. Thus, limits legally available to pay the claimant will be $100,000 with respect to damages attributable to the first tortfeasor, and $100,000 with respect to damages attributable to the second tortfeasor.

Like all ambiguous statutes, RCW 48.22.030(1) is to be construed in accordance with the intent of the Legislature. *American Legion Post 32 v. Walla Walla*, 116 Wn.2d 1, 8, 802 P.2d 784 (1991). It will be remembered that two of the Legislature's purposes in enacting Washington's UIM scheme were to provide full compensation for injured claimants, and to maintain a primary/secondary relationship among liability and UIM carriers.

The intent of the Legislature would be violated by construing the word "limits" as invariably meaning the liability limits stated in the tortfeasor's liability policy. In cases in which the limits stated in the policy are the same as those available to pay the claimant's damages, such a construction would do no harm. But in cases where the limits stated in the policy are greater than those legally available to pay the claimant's damages, such a construction would result in a gap between where liability coverage leaves off and UIM coverage begins. That gap would not be insured by either the liability or the UIM carrier, and the UIM claimant would not be fully compensated, even by a combination of payments from the two carriers, for all amounts that he or she is legally entitled to recover from others.

In contrast, the intent of the Legislature will be effectuated by construing the word "limits" as meaning limits legally available to pay the injured person's claim. Even in cases in which the limits stated in the liability policy exceed the limits legally available to pay the claimant's damages, this construction will have the effect of fully compensating the claimant, because the UIM carrier's obligation will take up where the liability carrier's leaves off, thus avoiding any uninsured "gap" between the two coverages. Moreover, the liability and UIM carriers will stand in a proper primary/ secondary relationship, because the liability carrier will be required to pay those amounts actually covered by the liability policy, and the UIM carrier will be required to pay those amounts that are in fact not covered by the liability policy.

Our view of legislative intent is buttressed by RCW 48.22.040(1).[4] In effect, that statute provides that when a liability carrier is insolvent, the amount to be subtracted from a UIM carrier's liability is not the stated limits of the liability policy, but rather that amount of the policy legally available to pay the UIM claimant's damages.

Our view is also buttressed by two Florida cases, *Del Toro v. Allstate Ins. Co.*, *supra*, and *State Farm Mut. Auto. Ins. Co. v. Diem*, *supra*. *See also* 8C J. Appleman, *Insurance* 104 (1981). In those cases, the Florida District Court of Appeal was called upon to construe a statute similar to ours in that it allowed UIM carriers to offset "limits applicable to the injured person." In each case, part of the stated limits of liability had been paid to other claimants, and part to the litigating UIM claimant. Although using reasoning somewhat different from ours, the Florida court held that the litigating claimant's UIM carrier could not set off the total stated limits paid to all claimants, but could only set off that part of the stated limits that had been legally available to pay the litigating claimant's damages.

Our view is not inconsistent with *Hamilton v. Farmers Ins. Co.*, 107 Wn.2d 721, 733 P.2d 213 (1987). In that case, the tortfeasor's stated liability limits were $500,000, but because of payments to other claimants, only about $491,000 remained legally available to the Hamiltons. 107 Wn.2d at 724. The court held at page 723 that the underinsurer was liable for Hamilton's "uncompensated damages above those [liability] limits", but it did not decide, apparently because it was not asked to, whether the "limits" that it was referring to were the stated limits of $500,000 or the remaining available limits of $491,000.

Parenthetically, we pause to relate what we have said so far to the imagery used in *Elovich v. Nationwide Ins. Co.*, 104 Wn.2d 543, 707 P.2d 1319 (1985). In that case, the

---

[4]RCW 48.22.040(1) provides that the term "underinsured motor vehicles" shall "be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency."

Supreme Court characterized UIM coverage as a "floating layer". 104 Wn.2d at 550. This of course implies a layer of liability coverage underneath the "floating" layer of UIM coverage. *See Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 87, 794 P.2d 1259 (1990) (UIM coverage is a "second" layer of coverage for the injured party); *Tissell v. Liberty Mut. Ins. Co.*, 115 Wn.2d 107, 120, 795 P.2d 126 (1990) (Callow, C.J., concurring) (same). In section I, we described when it is necessary to consider the liability "layer", and what liability policies are a part of that "layer". So far in section II, we have described the top "edge" of the liability layer and the bottom "edge" of the UIM layer, the two "edges" necessarily being coincident so as to avoid an uninsured "gap" between liability and UIM coverage. *Elovich* itself defines the top "edge" of the UIM layer.

## III

We turn now to this case. As we have seen, neither Gilven's nor Church's liability policy is "applicable" simply because PEMCO paid Dejbod. Either or both policies may become applicable when the liability of Church and Gilven is adjudicated, but that has not yet occurred. When it does, there may be findings (1) that neither Gilven nor Church is liable; (2) that only one or the other is liable; (3) that both are liable, with their liability being joint and several; or (4) that both are liable, with their liability being several only. These findings will yield the following results under RCW 48.22.030(1):

1. If neither Gilven nor Church is found liable in the arbitration proceeding, there is no need to determine whether their liability policies are applicable, and the issues in this case are moot.

2. If Gilven is found liable but Church is not, Gilven's liability policy will be legally available to Dejbod, but Church's will not be. Only Gilven's will be applicable within the meaning of RCW 48.22.030(1), and Allstate will be entitled to deduct $25,000.

3. If Church is found liable but Gilven is not, Church's policy will be legally available to Dejbod, but Gilven's will

not be. Only Church's policy will be applicable within the meaning of RCW 48.22.030(1), and Allstate will be entitled to deduct $100,000.

4. If both Gilven and Church are found liable, and their liability is joint and several pursuant to RCW 4.22.070(1), both of their policies will be legally available to Dejbod, and each policy will be available to pay for damages attributable to both tortfeasors. Both policies will be applicable within the meaning of RCW 48.22.030(1), and Allstate will be entitled to deduct $125,000.

5. If both Gilven and Church are found liable, but their liability is several only, pursuant to RCW 4.22.070(1)(b), both of their liability policies will be legally available to Dejbod. However, each will pay only to the extent of the liability of the person it insures, not exceeding policy limits, even if Dejbod successfully proves total damages exceeding $125,000. Each is therefore applicable to the extent of its insured's liability, or policy limits, whichever is less. The result is that Allstate will be entitled to deduct $25,000 from damages attributable to Gilven, and $100,000 from damages attributable to Church.[5]

## IV

Although we have dealt with the two primary questions in the case, a third still lurks. In general terms, the question is whether payment made by a liability carrier to settle a claim against its insured will inure to the benefit of the UIM carrier if in arbitration or litigation it is later determined that the liability insured was not liable, or was severally[6] liable for less than the amount paid in settle-

---

[5]Paragraphs 4 and 5 may cause the parties in some cases to invert their customary positions regarding the negligence of the claimant — in other words, the plaintiff may allege, and two or more defendants may deny, that the plaintiff was negligent. This peculiar inversion is a result of the interplay between RCW 48.22.030, the UIM statute, and RCW 4.22.070, the joint and several liability statute. Whatever problems it may cause are not before us today.

[6]Conceivably, the same question could also arise if the liability insured were jointly liable with others, and the amount of their joint liability was less than the amount paid in settlement.

ment. In specific terms, the question is (1) whether all or part of the $11,000 paid by PEMCO on Church's behalf will inure to Allstate's benefit if only Gilven is found liable, or if Church is found severally liable for less than $11,000; and (2) whether all or part of the $25,000 paid by PEMCO on Gilven's behalf will inure to Allstate's benefit if only Church is found liable, or if Gilven if found severally liable for less than $25,000. The question calls into issue whether a payment made in settlement, to the extent it exceeds the damages for which a liability insured is later found legally responsible, should be characterized as partial compensation for a claimant's injuries or as payment from a collateral source.

We decline to decide the question at this time. Neither party has identified, briefed or argued it, and it is not possible to fairly characterize this omission as affecting the rights of one party more than the other.[7] If the question is implicated in the award that ultimately comes out of the arbitration proceeding, and if the parties cannot agreeably compromise their differences, the question will have to be brought up again on a different day.

Remanded with directions to modify the declaratory judgment in accordance herewith.

ALEXANDER, J., concurs.
PETRICH, A.C.J., concurs in the result.

---

[7]Allstate claims only the right to offset the limits of applicable liability policies, a position we could construe as waiving any right to offset the limits of applicable policies *plus* whatever amounts Dejbod received from nonapplicable policies. Dejbod concedes that Allstate is entitled to offset the entire $36,000 he received, a position we could construe as waiving any claim that amounts he received from nonapplicable policies do not inure to Allstate's benefit. But neither party seems to be waiving more than the other.