[No. 34558-3-I.   Division One.   July 3, 1995.]

ALAMO RENT A CAR, INC., *Appellant*, v. STEVEN T.
SCHULMAN, ET AL., *Respondents*.

*Leonard Flanagan* and *Don Gulliford*, for appellants.
*Arnold Joseph Barer*, for respondent.

BECKER, J. — A multiple car collision has generated the question before us: where an injured claimant sues two of the drivers and one of their insurers becomes insolvent, will the claimant's underinsured motorist (UIM) coverage necessarily become a primary source of compensation? We hold that so long as at least one liability insurer with an applicable policy remains solvent, the UIM coverage remains secondary.

These are the undisputed facts. Steven Schulman rented a car from Alamo Rent A Car, Inc., in Seattle early on the morning of July 10, 1990. As he drove south on Interstate 5, Schulman came up suddenly behind a pickup occupied by Steven and Jennifer Miller. Phyllis Smith, the driver in front of the Millers, was proceeding very slowly. A semi truck behind Schulman bore down on all three vehicles, knocked Schulman's slowing vehicle out of the line, and

smashed into the Millers' car, causing it to burst into flames. The Millers died in the ensuing fire. Schulman suffered both physical and psychological injuries.

Schulman and the Millers' estates sued the trucking company and its driver (hereafter Morgan Trucking) and Smith.[1] Smith had liability insurance with General Casualty Insurance Company to a limit of $100,000 per claim, and with State Farm Mutual Automobile Insurance Company to a limit of $500,000 per claim. American Star Insurance Company insured Morgan Trucking. American Star became insolvent and went into liquidation on November 16, 1992. As provided by RCW 48.32.060, the covered claims arising from Morgan Trucking's policy with American Star became the responsibility of the Washington Insurance Guaranty Association (WIGA). WIGA, stepping into the shoes of American Star as its governing statute requires,[2] took part along with Smith's insurers in negotiations with Schulman.

Schulman eventually presented a settlement demand of $165,000 to Smith's insurers and WIGA. Schulman also initiated an arbitration proceeding against Alamo for UIM benefits. Alamo filed a declaratory judgment action against Schulman on September 29, 1993, seeking a stay of arbitration and dismissal of Schulman's claims against it. Meanwhile, Schulman's underlying suit against Smith and Morgan Trucking was moving toward a trial date set for the end of October 1993. Mediation resulted in a pretrial settlement. One of Smith's insurers, General Casualty, paid $15,000. WIGA, acting on behalf of Morgan Trucking's insurer, American Star, paid $45,000 and took an assignment of Schulman's rights against Alamo.

WIGA, now stepping into the shoes of its assignor Schulman, counterclaimed against Alamo in the declaratory

---

[1] A settlement pertaining to the Miller estates gave rise to a different appeal. *See Smith v. Washington Ins. Guar. Ass'n*, 77 Wn. App. 250, 890 P.2d 1060 (1994).

[2] *See Washington Ins. Guar. Ass'n v. McKinstry Co.*, 56 Wn. App. 545, 549, 784 P.2d 190, *review denied*, 114 Wn.2d 1017 (1990).

judgment action, asking that the court award WIGA $25,000 as the limits of UIM benefits under Alamo's contract with Schulman. The parties filed cross-motions for summary judgment. The trial court awarded WIGA the $25,000, as well as prejudgment interest, attorney fees and costs. From this judgment, Alamo appeals.

We address briefly Alamo's first contention, that Schulman rejected UIM coverage when he signed the Alamo rental contract. The only evidence on this point is the contract language: "You and I reject uninsured motorist coverage to the extent permitted by law". This court recently held that substantially similar contract language cannot by itself amount to the "affirmative and conscious" rejection of coverage that the law requires.[3]

Schulman, therefore, has UIM coverage of $25,000 with Alamo. But is Alamo's coverage available to Schulman and thus owed to WIGA as Schulman's assignee? Alamo argues it is not, and asserts the statutory right of the UIM insurer to offset the available limits of liability insurance applicable to Schulman.

WIGA first contends Alamo, having wrongfully denied coverage, is estopped from arguing as a "backup" position that it has any right of offset as a UIM insurer. The authorities WIGA relies on are *Greer v. Northwestern Nat'l Ins. Co.*,[4] and *Chaussee v. Maryland Casualty Co.*[5] We do not read these cases as preventing an insurer from arguing more than one basis for the denial of coverage when it files a declaratory judgment action.

WIGA next contends that the insolvency of a tortfeasor's insurer always triggers the claimant's UIM policy because the insurance guaranty statute requires a claimant to exhaust other insurance, including UIM coverage, before obtaining coverage from WIGA. The section of the

---

[3]*Corley v. Hertz Corp.*, 76 Wn. App. 687, 693, 887 P.2d 401 (1994), *review denied*, 128 Wn.2d 1007 (1996).

[4]109 Wn.2d 191, 743 P.2d 1244 (1987).

[5]60 Wn. App. 504, 803 P.2d 1339, *modified*, 812 P.2d 487, *review denied*, 117 Wn.2d 1018 (1991).

WIGA statute entitled "Nonduplication of recovery" provides:

> Any person having a claim against his insurer under any provision in his insurance policy which is also a covered claim shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of such recovery under the claimant's insurance policy.[6]

This exhaustion provision reduces WIGA's obligation where the claimant has another source of recovery for the claim against the insolvent insurer.[7] UIM coverage is among such alternative sources of compensation.[8] The WIGA statute, however, requires a claimant to exhaust the coverage of his UIM policy only when he has a "right under such policy".[9] Therefore, the WIGA statute does not automatically give Schulman access to his own UIM coverage when a liability insurer becomes insolvent. Any right to such coverage originates not in the WIGA statute, but in the "insolvency trigger" portion of the UIM statute, RCW 48.22.040(1). That section includes within the term "underinsured motor vehicle" any vehicle whose insurer, like American Star, has become insolvent. The appropriate inquiry is whether Schulman had a right to receive UIM benefits under the Alamo contract after American Star became insolvent, irrespective of WIGA's responsibilities to stand in for American Star.

█ Under the statute that defines when UIM coverage becomes available, RCW 48.22.030, claimants must first turn to "applicable" liability policies. UIM coverage becomes available only if the claimant's damages exceed applicable liability coverage.[10] WIGA argues that the

---

[6]RCW 48.32.100(1).

[7]*McKinstry*, 56 Wn. App. at 550.

[8]*See Proios v. Bokeir*, 72 Wn. App. 193, 202, 863 P.2d 1363 (1993).

[9]RCW 48.32.100(1).

[10]RCW 48.22.030(1).

"insolvency trigger" for UIM coverage operates independently of the analysis that determines whether any liability policies are "applicable" because it is in a different section of the UIM statute. We disagree. The two sections work together. A vehicle that is "underinsured" under RCW 48.22.040(1) by reason of insolvency is embraced within the overarching definition of "underinsured motor vehicle" in RCW 48.22.030 and subject to its inquiry as to whether there is an "applicable" liability policy.

■ A liability policy is applicable when "the claimant, if he or she diligently pursued the claim against the liability insured to final adjudication, could legally require the liability insurer to pay".[11] American Star's policy is inapplicable because Schulman cannot legally require American Star to pay. If Schulman had sued only American Star's insured, the insolvency of American Star would trigger Schulman's UIM coverage through Alamo. But Schulman also sued Smith, and the question remains whether Smith's liability policies are applicable. If so, Alamo is entitled to an offset against Schulman's damages.

■ Schulman's circumstances closely resemble those of the claimant in *Allstate Ins. Co. v. Dejbod*.[12] A driver, Dejbod, was injured in a multiple car collision. He sued the other two drivers and settled with their liability insurers before trial. He obtained the $25,000 liability limits of one driver's policy, but only $11,000 out of the $100,000 limits of the other driver's policy. He then made a UIM claim against his own insurer, Allstate, and demanded arbitration. Allstate took the position that the total combined limits of both liability policies were applicable to Dejbod as a matter of law. Allstate argued it was therefore entitled to offset the total limits of $125,000 from such damages as Dejbod might prove at arbitration. Dejbod

---

[11]*Allstate Ins. Co. v. Dejbod*, 63 Wn. App. 278, 284-85, 818 P.2d 608 (1991); *see also Mailloux v. State Farm Mut. Auto. Ins. Co.*, 76 Wn. App. 507, 514, 887 P.2d 449 (1995).

[12] 63 Wn. App. 278, 818 P.2d 608 (1991).

claimed Allstate should pay any damages in excess of $36,000, the total settlement amount he had received from the other insurers. In the ensuing declaratory action, the court held that the applicability of the alleged tortfeasors' liability policies, and the consequences in terms of any offset for the UIM insurer, could be determined only through factfinding.[13] A settlement does not, without more, determine liability.[14]

Schulman likewise sued two alleged tortfeasors, Smith and Morgan Trucking. As in *Dejbod*, there has been no factfinding. Whether Smith's policies are "applicable" to Schulman and if so, to what amount, remains unclear in the present posture of the case.

A factfinding determination of Schulman's claim (now held by WIGA) against the two alleged tortfeasors, Smith and Morgan Trucking, has a variety of possible outcomes. If 100% of the liability were assigned to Smith, Alamo would be entitled to offset Smith's insurers' combined limits of $600,000; Schulman would receive nothing more from Alamo unless he proved damages exceeding that sum. If 100% of the fault were allocated to Schulman, no one would be liable to him, and Alamo likewise would have no responsibility to cover him. But if 100% of the liability were allocated to Morgan Trucking, Alamo would not be entitled to any offset at all, because Morgan Trucking's insurer is insolvent and its policy is not applicable.[15]

These possible outcomes, and others involving allocation of fault among the various actors, are now most likely academic. Although Schulman originally sought arbitration of his claim against Alamo, WIGA has not, in the course

[13]*Dejbod*, at 291.

[14]*Dejbod*, at 286.

[15]*See* RCW 48.22.040(1).

of this appeal, expressed interest in resolving the dispute through arbitration or any other form of factfinding. In this appeal, WIGA stands on its argument that American Star's insolvency makes Schulman's UIM coverage primary. As discussed above, that argument is not dispositive where the claimant has sued other defendants besides the one whose insurer is insolvent.

■ WIGA has not demonstrated that the sum of the limits of the liability policies applicable to Schulman was less than his damages.[16] Schulman therefore had no right to collect UIM benefits, and WIGA is not entitled to receive them as his assignee. This result accords with the WIGA statute's purpose of placing the claimant in the same position as if the tortfeasor's insurer had remained solvent.[17] Assuming American Star had remained solvent and Schulman had made the identical settlement with both Smith and Morgan Trucking, Schulman would not be able to collect UIM benefits unless he could prove that the sum of the limits of the applicable liability policies was less than his damages.

The order on summary judgment in favor of WIGA is reversed. The trial court is directed to enter summary judgment in favor of Alamo, declaring, consistent with this opinion, that while Schulman is entitled to UIM coverage from Alamo, Alamo is entitled to an offset for the total combined limits of applicable liability policies. WIGA's request for attorney fees is denied.

COLEMAN and Cox, JJ., concur.

Review denied at 125 Wn.2d 1005 (1995).

[16]See RCW 48.22.030(1).

[17]See Washington Ins. Guar. Ass'n v. Mullins, 62 Wn. App. 878, 887, 816 P.2d 61 (1991).