NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

DEC 23 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| AMERICAN FAMILY CONNECT PROPERTY AND CASUALTY INSURANCE COMPANY, FKA IDS Property Casualty Insurance Company,<br><br>                   Plaintiff-Appellee,<br><br>   v.<br><br>ELIZABETH HUEBNER,<br><br>                   Defendant-Appellant. | No.   21-36057<br><br>D.C. No. 2:20-cv-01328-RSL<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted October 19, 2022
Seattle, Washington

Before: TALLMAN, R. NELSON, and FORREST, Circuit Judges.
Dissent by Judge TALLMAN.

Defendant Elizabeth Huebner appeals from the district court's order granting

Plaintiff American Family Connect Property and Casualty Insurance Company's

(Connect) motion for summary judgment. We have jurisdiction under 28 U.S.C.

---

   *   This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

§ 1291, and we affirm, concluding that Connect is entitled to a $250,000 offset applicable to Huebner's damages.

1. ***Jurisdiction & Ripeness.*** Connect brought this declaratory action under the Declaratory Judgment Act and pleaded diversity jurisdiction. 28 U.S.C. § 2201. Although the record appeared to indicate that subject matter jurisdiction "does in fact exist," we issued an order under 28 U.S.C. § 1653 directing Connect to file a proposed amended complaint because it did not plead its state of incorporation. *See NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 613 (9th Cir. 2016) (citation omitted). Connect submitted an amended pleading that properly alleged diversity of citizenship: Connect is a citizen of Wisconsin and Huebner is a citizen of Washington.

We also asked the parties to address whether this case is ripe for adjudication where Huebner's damages resulting from the car accident were not pleaded and may not yet be known. We conclude that this case is ripe. Ripeness requires that an actual controversy exists "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 671 (9th Cir. 2005) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

An actual controversy exists here because Connect concedes that Huebner was in an accident covered by her policy, and the parties dispute whether Connect is entitled to offset Huebner's $250,000 settlement tendered by the tortfeasor's insurer,

2

from the amount of her damages.[1] *See Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 n.2 (9th Cir. 1998) ("[W]e have consistently held that a dispute between an insurer and its insureds over the duties imposed by an insurance contract satisfies Article III's case and controversy requirement." (citing cases)). In these circumstances, clarification of Connect's right of offset is not merely a hypothetical dispute. *See Aydin Corp. v. Union of India*, 940 F.2d 527, 528 (9th Cir. 1991) (explaining that "[u]nder the strictest interpretation of the ripeness doctrine, all declaratory judgment claims would be suspect, because declaratory relief involves plaintiffs seeking to clarify their rights or obligations *before* an affirmative remedy is needed" but the Supreme Court has "rejected [such] strict conception" (first citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 228 (1937); and then citing *Md. Cas.*, 312 U.S. at 273)). The answer to this dispute can impact the parties even before Huebner's damages are resolved. *Cf. Robinson*, 394 F.3d at 671–72 (finding dispute over interpretation of lease provision ripe even though provision was contingent upon future property value, highlighting that "it [wa]s impracticable" for plaintiff to make informed future decision whether to sell its interest in the lease absent such clarification). For example, a decision whether to settle Huebner's claim, or litigate the case "is impracticable" where Connect is "unable accurately to estimate" its

---

[1]The parties at oral argument also contended that they dispute whether Huebner's damages equal or exceed $250,000—an issue that is not before us.

3

liability exposure in light of its rights and obligations under the policy. *See id.* Moreover, we need not speculate about the amount of Huebner's damages to decide the narrow legal question presented. And even if the possibility of Huebner's total damages being below the relevant insurance policy limits were relevant to our decision—it is not—"a single factual contingency" would not make our "decision 'impermissibly speculative.'" *In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009) (citation omitted). We also need not entertain the parties' arguments about whether Huebner will be fully or doubly compensated. *See Allstate Ins. Co. v. Dejbod*, 818 P.2d 608, 610–11 (Wash. Ct. App. 1991) (explaining "full compensation" for these purposes focuses on recovery the insured is "legally entitled to recover from [the] tortfeasor[], up to the sum of applicable liability and UIM limits").[2]

2.      ***The Offset Rule.*** Huebner argues that the district court erred in granting Connect summary judgment by impermissibly creating an offset "rule." We review the district court's interpretation of state law and insurance policies de novo. *Westport Ins. Corp. v. Cal. Cas. Mgmt. Co.*, 916 F.3d 769, 773 (9th Cir. 2019). In interpreting state law, we are bound by decisions of the state's highest court and "will ordinarily accept the decision of an intermediate appellate court as the

---

[2]Further, while Connect seemingly abandoned this position at oral argument, it argued in its briefing that the offset should apply to its UIM policy limit of $250,000, meaning that it should not be liable at all.

controlling interpretation of state law" unless there is "convincing evidence that the state's supreme court likely would not follow it." *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021) (internal quotation marks and citations omitted).

We conclude that the district court did not err. The Washington Supreme Court has answered the narrow issue before us. Under Washington statute, a vehicle is underinsured when the insured's damages exceed the limits of liability of "applicable" insurance policies. Wash. Rev. Code § 48.22.030(1).[3] In computing the payment owed to an insured, a UIM insurer "always is allowed to credit the full amount of the tortfeasor's liability coverage against the insured's damages." *Hamilton v. Farmers Ins. Co. of Wash.*, 733 P.2d 213, 217 (Wash. 1987) (en banc). Washington courts have interpreted section 48.22.030 as obligating a UIM carrier to pay (1) the insured's legally recoverable damages minus (2) the limits of liability of applicable insurance policies. *See Dejbod*, 818 P.2d at 611. This rule exists because a UIM insurer "stand[s] in the shoes of the tortfeasor," *Hamm v. State Farm Mut. Auto. Ins. Co.*, 88 P.3d 395, 397 (Wash. 2004) (en banc), and UIM insurance supplements, but does not supplant, liability coverage. *Dejbod*, 818 P.2d at 611. The

---

[3]The district court also referenced and relied on section 48.22.040 of the Washington Code in its decision. This section addresses the insurer's right of *reimbursement* from "any *excess* recovery of the insured resulting from a settlement or judgment." *Hamilton v. Farmers Ins. Co. of Wash.*, 733 P.2d 213, 217 (Wash. 1987) (en banc) (emphasis added). It is thus inapplicable here.

5

rule applies even if the insured settles with the tortfeasor for less than the tortfeasor's liability policy limit, regardless of whether the UIM policy allows for it. *See Devany v. Farmers Ins. Co.*, 139 P.3d 352, 353–54 (Wash. Ct. App. 2006).

Here, it is undisputed that the tortfeasor did not contest liability, the tortfeasor had a liability policy limit of $250,000, and Huebner settled with the tortfeasor for the full policy limit.[4] Connect is therefore entitled to offset the $250,000 settlement amount against Huebner's damages. *See Hamilton*, 733 P.2d at 217; *see also Ochoa v. Progressive Classic Ins. Co.*, 296 P.3d 906, 910–13 (Wash. Ct. App. 2012) (holding a tortfeasor's liability policy limit is applicable for section 48.22.030 purposes where liability is not at issue and, had the insured diligently pursued her claim against the tortfeasor, she could "legally require" the tortfeasor to pay).

3.  ***Workers' Compensation Benefit.*** Huebner also argues that the tortfeasor settlement was a workers' compensation benefit and allowing Connect to offset it impermissibly amounts to an offset of "workers' compensation benefits paid." The Washington workers' compensation statutory scheme allows the

---

[4]Because the tortfeasor's insurance company tendered the $250,000 policy amount, this amount was "legally available" to pay Huebner's claim. *See Dejbod*, 818 P.2d at 613–15. The tortfeasor's insurer was not insolvent, there was no dispute as to responsibility for damages attributable to the tortfeasor, and there were not multiple injured claimants. *See id.* To the extent the Department of Labor and Industries or Group Health Cooperative could be construed as another claimant, they stood "in the shoes of" Huebner where Washington's workers' compensation statutory scheme "ensures that the worker will not recover twice." *Carrera v. Olmstead*, 401 P.3d 304, 308 (Wash. 2017) (en banc).

Department of Labor and Industries (L&I) or self-insurer to assert a lien on recovery where a third person is liable for the injury. Wash. Rev. Code §§ 51.24.030, 51.24.060. L&I or the self-insurer is entitled to up to 75% of the worker's third-party recovery "to the extent necessary to reimburse the department and/or self-insurer for benefits paid." *Id.* § 51.24.060; *see also id.* § 51.24.050. "The statute ensures that the worker will not recover twice." *Carrera v. Olmstead*, 401 P.3d 304, 308 (Wash. 2017) (en banc).

The $250,000 tendered by the tortfeasor's liability insurer was not a workers' compensation benefit. Huebner received $226,877.61 in workers' compensation benefits for partial income loss and medical expenses. *Those* payments were workers' compensation benefits. Huebner's real disagreement, also raised by the dissent, is with the workers' compensation statutory scheme that allows reimbursement from her third-party recovery. *See id.*; *see also* Wash. Rev. Code § 51.24.030. But the cases on which Huebner and the dissent rely are inapposite and do not necessitate that we find in her favor. *See Allstate Ins. Co. v. Welch*, 727 P.2d 268, 269–70 (Wash. Ct. App. 1986) (voiding policy provision that allowed UIM insurer to offset disability and workers' compensation benefits in part because "there is no statutory authorization for a setoff provision such as the one contained in

7

appellant's policy")[5]; *Britton v. Safeco Ins. Co. of Am.*, 707 P.2d 125, 127–28 (Wash. 1985) (en banc) (insurer sought an offset for "disability benefits").[6]

Connect is entitled to an offset in the amount of $250,000—the tortfeasor's liability policy limit—applicable against Huebner's damages. Because we affirm the district court's grant of summary judgment in favor of Connect, Huebner is not entitled to attorney fees. *See Heringlake v. State Farm Fire & Cas. Co.*, 872 P.2d 539, 550 (Wash. Ct. App. 1994).

**AFFIRMED.**

---

[5]The dissent argues that "[o]ur decision today allows Connect to effectively sidestep the clear rule of *Welch* by waiting for workers' compensation to deduct benefits from a third-party settlement, and then claiming an offset of the full settlement amount." Dissent at 9. As explained, the dissent's real issue is with Washington's workers' compensation statutory scheme allowing L&I itself to recoup benefits it paid.

[6]We do not consider Huebner's late-raised public policy argument. The Washington legislature and judiciary—best positioned to determine Washington state policy—allow the offset at issue here.



FILED

DEC 23 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

TALLMAN, Circuit Judge, dissenting.

Our decision today exceeds the limits of our authority as a federal court sitting in diversity and disrespects state law. It begins by racing past the limits of our subject matter jurisdiction under Article III in its haste to adjudicate a state-law insurance dispute in the absence of a ripe case or controversy. Then, ignoring principles of comity, it seriously undermines prior rulings of Washington state courts, which have already held that insurers providing underinsured motorist coverage may not "reduce damages payable by the amount of any worker's compensation benefits received by the injured insured." *Allstate Ins. Co. v Welch*, 727 P.2d 268, 269 (Wash. Ct. App. 1986) (internal quotation marks omitted). I respectfully dissent.

I

On March 5, 2014, Elizabeth Huebner was working as a registered home hospice nurse for GroupHealth in Seattle, Washington. As she was driving to see a patient, Huebner was struck by a driver who ran a stop sign. Huebner suffered extensive injuries, including a concussion, broken bones, injuries to her neck and back, and persistent pain which has lasted for years. Those injuries effectively ended her nursing career. Because Huebner was working at the time of the accident, she qualified for and received limited benefits from a workers' compensation program

1

administered by her employer under the authority of Washington's Department of Labor and Industries (L&I).[1] But those benefits ended in 2016.

Huebner also filed a claim against the at-fault driver who caused her injuries. She settled that claim for $250,000 — the limit of the at-fault driver's insurance policy. But Huebner never saw most of the money. Instead, L&I issued an order taking almost half of it to reimburse workers' compensation for benefits it had paid out to her as prescribed by RCW 51.24.060. Huebner had also purchased underinsured motorist (UM) coverage from the defendant, American Family Connect Property and Casualty Insurance (Connect). But when Huebner filed a claim, Connect filed suit seeking to offset the entire amount of the settlement paid by the at-fault motorist against Huebner's damages claim — without regard to the amount taken from that settlement to pay for Huebner's workers' compensation benefits.

Remarkably, Connect conceded at oral argument that the offset it seeks may not matter. Connect agrees that under Washington law, it can only offset Huebner's

---

[1] Under Washington State's workers' compensation system, some employers are self-insured. Rather than buy into the state's program, the employer administers its own workers' compensation program — essentially, the employer stands in the shoes of the state. Huebner's employer, GroupHealth, was such a self-insured employer. I refer to "workers' compensation" for simplicity because the relevant statutes are equally applicable to the state's program and a self-insured employer's program. *See* Wash. Rev. Code. § 51.24.060(1)–(3) (describing the rights of "the [L&I] department and/or self-insurer") (cited hereinafter as RCW).

2

settlement against her actual damages — not against the limits of her UM policy with Connect.[2] Huebner claims that Connect owes her the full limit of her UM policy, which is also $250,000. Because Connect can only claim an offset against Huebner's damages rather than her policy limits, if Huebner's actual damages from the accident are $500,000 or more, then Connect owes her $250,000 regardless of any offset. Equally remarkable is the fact that the record before us contains only limited information about Huebner's actual damages. Connect's complaint failed to even allege Huebner's damages, and what little evidence the record does contain suggests they may well exceed $500,000. It is therefore entirely possible — perhaps even likely — that our decision today changes nothing at all about Connect's liability to Huebner.

## II

"A foundational principle of Article III is that 'an actual controversy must exist . . . at the time the complaint is filed.'" *Trump v. New York*, 141 S. Ct. 530, 534 (2020) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013)). To be

---

[2] Connect's counsel clarified its position at oral argument: "Let's assume for a moment that the damages are [$300,000] . . . like the gross number to fully compensate Ms. Huebner would be $300,000. American Family's position would be, and Washington law would support this, that she already received $250,000. Therefore, she'd only be entitled to [$50,000] under her UM policy out of the available [$250,000]." Oral Arg. at 19:16. In response to a follow up question, counsel confirmed that if Huebner's damages exceed $500,000, Connect owes Huebner $250,000 regardless of any offset. *Id*. at 20:39.

3

justiciable under Article III, a case must be ripe. *Id*. at 535. "If a case is not ripe for review, then there is no case or controversy, and the court lacks subject-matter jurisdiction." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). We have an independent obligation to ensure that a case is ripe, even if no party has raised the issue. *Golden v. Cal. Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1086 (9th Cir. 2015).

"The requirement that a case or controversy exist under the Declaratory Judgment Act is 'identical to Article III's constitutional case or controversy requirement.'" *Robinson*, 394 F.3d at 669 (quoting *Am States Ins. Co v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994)). A case brought under the Act is only ripe when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. at 671 (quoting *Md. Cas. Co. v. Pac. Coal & Oil. Co.*, 312 U.S. 270, 273 (1941)). A case is not ripe if the alleged injury depends on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 793 (9th Cir. 2012) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). While a contract dispute is ripe when it "involves measurable financial consequences," a "hypothetical disagreement" is not enough to create a justiciable controversy. *Robinson*, 394 F.3d at 671.

4

On the record before us at this stage of claims adjudication, this dispute is purely hypothetical. Connect asks us to interpret state law in the absence of any evidence that our decision will reduce its liability to Huebner by even one dollar. Perhaps things would be different if Connect had, for example, alleged Huebner's damages in its complaint. *See Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 n.2 (9th Cir. 1998) ("A litigant's standing is normally evaluated on the pleadings."). But Connect failed to do even that. Instead, having rushed to the courthouse to reduce or deny Huebner's claim, Connect asks us to *assume* Huebner's damages are low enough that the offset will matter and render an advisory opinion which has no effect unless that assumption is eventually proven correct. This is precisely the kind of speculative contingency that we have previously held shows a dispute is not ripe for adjudication. *See Alcoa*, 698 F.3d at 793–94 (holding dispute was not ripe where the challenged contract provisions might never come into effect); *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572–73 (9th Cir. 1996) (holding a contract dispute was not ripe where party allegedly in breach still had time to perform); *Aydin Corp. v. Union of India*, 940 F.2d 527, 528 (9th Cir. 1991) (holding a challenge to enforcement of a foreign arbitration award was unripe because the plaintiff could still prevail in foreign arbitration).

Adjudicating an unripe dispute is especially inappropriate where, as here, the record is "riddled with contingencies and speculation that impede judicial review."

5

*See Trump*, 141 S. Ct. at 535. State courts have repeatedly taken a purposivist approach to interpreting Washington's underinsured motorist insurance statute, asking whether a particular interpretation will result in full compensation under the UM policy or lead to a double recovery for the insured. *See, e.g., Hamm v. State Farm Mut. Auto Ins. Co.*, 88 P.3d 395, 398 (Wash. 2004); *Hamilton v. Farmers Ins. Co.,* 733 P.2d 213, 216 (Wash. 1987); *Allstate Ins. Co. v. Dejbod*, 818 P.2d 608, 614–15 (Wash. Ct. App. 1991).[3] Accordingly, both parties support their preferred interpretation of the statute with arguments that turn on damages: Huebner's briefing suggests at least ten times that she will be denied adequate compensation if an offset is allowed, while Connect's brief asserts no fewer than seven times that Huebner will receive an excess recovery absent an offset. So will our interpretation of state law leave Huebner undercompensated or prevent her from receiving a double recovery? With so little information about Huebner's damages, there is no way to know.

---

[3] At times, Washington courts have rejected the language of "full compensation" in favor of describing UM insurance as a "floating layer" of coverage under which "insureds should recover up to the amount of their damages but not more than the [UM] policy limits." *Elovich v. Nationwide Ins. Co*, 707 P.2d 1319, 1323–24 (Wash. 1985); *see also Greengo v. Pub. Emps. Mut. Ins. Co.*, 959 P.2d 657, 662 (Wash. 1998) (holding that "anti-stacking" clauses are allowed because they apply "after the insured has received a full [UM] recovery"). But even under a floating layer theory actual damages matter because courts must determine where the bottom "layer" of liability coverage ends and the floating "layer" of UM coverage begins "so as to avoid an uninsured 'gap'" between the two. *Dejbod*, 818 P.2d at 515.

Our footnote from *Dizol* is not to the contrary. 133 F.3d at 1223 n.2. In *Dizol*, — a case which turned largely on prudential ripeness, rather than the limits of our subject matter jurisdiction under Article III — the insurer alleged that the insured's claim was barred by the statute of limitation and that the insured was entitled to no recovery whatsoever. *Id*. at 1222. We held that Article III jurisdiction existed because the insurer "allege[d] it was threatened with injury by virtue of being held to an invalid policy." *Id*. at 1223 n.2. Connect has alleged no similar injury in this case — it concedes that Huebner is covered by the UM policy at issue.[4] Instead, Connect asks us to resolve a question of state law which, contingent on Huebner's damages, could someday affect how much it owes her under the contract at issue. Because Article III does not empower federal courts to answer these sorts of hypothetical questions by rendering advisory opinions, we should reverse and remand with instructions to dismiss this case without prejudice for lack of subject matter jurisdiction as currently pled.

### III

Perhaps because of the abstract nature of the dispute before us, there remain serious doubts about the majority's interpretation of Washington law. Washington

---

[4] The majority suggests this dispute is ripe because the outcome will affect Connect's decision to litigate or settle this case. But "it is not the function of the federal courts to crystallize the litigation strategies of parties whenever asked to do so." *Aydin*, 940 F.2d at 529.

7

state courts have already ruled that under RCW 48.22.030, a UM insurance provider like Connect is not permitted to "reduce damages payable by the amount of any worker's compensation benefits received by the injured insured." *Welch*, 727 P.2d at 269 (internal quotation marks omitted). Yet our decision today allows Connect to do exactly that.

Under Washington's workers' compensation statutes, L&I had the right to execute a statutory lien of up to 75% of Huebner's recovery from the at-fault driver or, if the recovery had been large enough, the entire amount "necessary to reimburse [workers' compensation] for benefits paid." *See* RCW 51.24.060(1)(b)–(c).[5] Workers' compensation also had the right to notice of any action brought by Huebner, the right to file a notice of its interest in that action, the right to be served all pleadings filed in that action, the right to intervene in the action, and the authority to veto any settlement Huebner reached. RCW 51.24.030(2), 51.24.060(2)–(3), 51.24.090. If Huebner had decided not to sue the at-fault driver, workers' compensation could sue in her name for the benefit of the state. *See* RCW 51.24.050; *Carrera v. Olmstead*, 401 P.3d 304, 311–12 (Wash. 2017). Had Huebner's recovery exceeded the amount necessary to reimburse workers' compensation for benefits paid to date, future benefit payments would be suspended until she had expended the

---

[5] I agree with the majority that Connect is entitled to offset the 25% of the settlement Huebner was allowed to retain under section 51.24.060(1).

entire remaining balance to cover costs incurred from the accident. *See* RCW 51.24.060(1)(d)–(e). In essence, Huebner's settlement was converted into workers' compensation benefits by operation of law.

To say that Connect is not asking to offset benefits Huebner received from workers' compensation because she held nominal title to the settlement from which they were paid is to make a distinction without a difference. Had Huebner received $10,000 in benefits directly from workers' compensation, Washington law is clear that Connect could not offset that amount. *Welch,* 727 P.2d at 270. Yet Connect says that if workers' compensation pays Huebner $10,000, then takes the same $10,000 from Huebner's settlement to recoup the cost of paying benefits, it may now offset the $10,000. But the end result is the same: Connect is allowed to "reduce damages payable by the amount of any worker's compensation benefits received by the injured insured." *Contra id*. at 269. Our decision today allows Connect to effectively sidestep the clear rule of *Welch* by waiting for workers' compensation to deduct benefits from a third-party settlement, and then claiming an offset of the full settlement amount.

Perhaps, if Washington courts were asked today to overrule *Welch*, they would. Perhaps they would instead adopt the rule the majority applies — a rule which is admittedly simpler and easier to apply than one which allows a UM insurer to claim an offset for the full amount of some settlements, but not others. But that

9

is not our role as a federal court exercising diversity jurisdiction.  *See Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021).  We are required to respect the limits of Article III and take state law as we find it.  Because our decision today does neither, I respectfully dissent.