986 P.2d 823 (1999)
139 Wash.2d 443
ALLSTATE INSURANCE COMPANY, Respondent,
v.
Remedios and Saturnino BATACAN, Petitioners.
No. 66493-5.
Supreme Court of Washington, En Banc.
Argued November 18, 1998.
Decided October 21, 1999.
*824 Harbaugh & Bloom, Gary Neil Bloom, Richter-Wimberley, PS, Daniel Edward Huntington, Debra Leigh Stephens, Spokane, Amicus Curiae on behalf of Washington State Trial Lawyers Association.
John Andrew Hoglund, Olympia, for Petitioners.
Gordon, Thomas, Honeywell, Bradley Alan Maxa, Tacoma, for Respondent.
SANDERS, J.
Remedios and Saturnino Batacan (Batacans) claim their underinsured motorist carrier, Allstate Insurance Company, wrongfully denied coverage for injuries sustained in a three-car accident. Allstate prevailed at the trial court on summary judgment, a result which was affirmed on appeal to the Court of Appeals, Division Two. We granted review and reverse.

Facts
As the Batacans passed a stalled truck driven by Sang Kim on Interstate 5, Margery Cantrill collided with the truck, pushing it into the Batacans' vehicle. Kim had no *825 liability insurance; however Cantrill had $300,000 limits through Safeco Insurance Company. The Batacans sued both Kim and Cantrill while simultaneously claiming the benefit of underinsured motorist coverage through Allstate by virtue of the fact that Kim was uninsured.
Unable to resolve their differences, the Batacans and Allstate proceeded to an underinsured motorist arbitration pursuant to policy provisions.[1] The three-arbitrator panel determined that Kim and Cantrill were each 50 percent responsible for the accident, assessing Remedios Batacan's damages for a shoulder injury at $58,000 and Saturnino Batacan's damages at $2,000. Allstate, however, refused to pay anything, claiming the right to offset Cantrill's $300,000 liability against the $60,000 total damages, suggesting the Batacans try to settle with Cantrill "in the neighborhood of the arbitration award." Clerk's Papers (CP) at 46.
To confirm the propriety of coverage denial Allstate filed a declaratory judgment action seeking a judicial declaration that it had no obligation to pay UIM benefits in any amount to the Batacans. The Batacans answered and counterclaimed for breach of the insurance contract, violation of the Consumer Protection Act, bad faith, fraud, and equitable relief. Thereafter the Batacans settled with Cantrill and her insurance carrier, Safeco, for $54,000. The claim against Kim, however, was not settled.
On cross-motions for summary judgment, the Pierce County Superior Court declared the Batacans were not entitled to UIM coverage from Allstate and for that reason dismissed the Batacans' counterclaims as well. The Court of Appeals affirmed, reasoning that Kim and Cantrill were jointly and severally liable and since Cantrill's limits of liability exceeded the total damages awarded in the arbitration, a complete setoff of Cantrill's limits of liability against the UIM arbitration award was appropriate pursuant to Allstate Ins. Co. v. Dejbod, 63 Wash.App. 278, 284, 818 P.2d 608 (1991).
Although both the Batacans and Allstate briefed and argued their interpretations of the underinsured motorist statute, RCW 48.22.030, neither claims this contract of insurance is inconsistent with that statute or otherwise void for public policy reasons. Accordingly, we determine this case based upon the plain language of the governing contract of insurance.
The underinsured motorist endorsement to that policy generally provides that it is the responsibility of the insurance company to pay those damages its insured would be legally entitled to recover from an underinsured motorist up to policy limits:
B. WE WILL PAY
1. We will pay all sums the insured is legally entitled to recover as damages from the owner or driver of an underinsured motor vehicle.
2. We will pay under this insurance only after all applicable liability bonds or policies have been exhausted by judgments or payments.
CP at 59 (Underinsured Motorists Insurance (UIM) endorsement ¶ B.1.-2.).
The policy also defines "underinsured motor vehicle":
A. 4. "Underinsured motor vehicle" means a land motor vehicle or trailer:
a. For which no liability bond or policy applies at the time of an accident, or
b. For which there is a liability bond or policy at the time of an accident but which does not provide at least the amount an insured is legally entitled to recover as damages caused by the accident, or....
CP at 58 (UIM endorsement ¶ A.4.a.-b.).
The policy also limits Allstate's liability:
E. OUR LIMIT OF LIABILITY

....
*826 2. Any amount payable for damages which the insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury or property damage caused by an accident shall be reduced by:
....
b. All sums paid by or for anyone who is legally responsible, including all sums paid under the policy's LIABILITY INSURANCE.
CP at 59 (UIM endorsement ¶ E.2.b.).

Issues
In the final analysis three issues are presented:
1. Was the Kim vehicle an "underinsured motor vehicle"? We answer yes.
2. If so, were Kim and Cantrill jointly and severally liable for the Batacans' damages? We answer no.
3. If there were joint and several liability, would Allstate's obligation to pay the Batacans be extinguished? We leave this answer for another day.
As the only question before this court is the legal issue of insurance coverage, our review is de novo. Mid-Century Ins. Co. v. Henault, 128 Wash.2d 207, 212, 905 P.2d 379, 59 A.L.R.5th 789 (1995).

Analysis

I.

Did Kim drive an "underinsured motor vehicle"?
The threshold contract question is easily resolved in the Batacans' favor because Kim is "the owner or driver of an underinsured motor vehicle" (CP at 59 (UIM endorsement ¶ B.1.)) and the Kim vehicle is a "motor vehicle ... [f]or which no liability bond or policy applies at the time of an accident...." (CP at 58 (UIM endorsement ¶ A.4.a.)). The fact, or prospect, that Batacans can also make a recovery from Cantrill, or Cantrill's liability policy, does not make the Kim vehicle insured.
Under certain circumstances the liability policy of the third vehicle may be a collateral source for recovery to the injured victim; however, under no circumstances can it be said that the liability policy, which covers the third vehicle, "applies" to make the otherwise uninsured second vehicle "insured." In short, Cantrill's liability policy covers or applies to the Cantrill vehicle; it does not cover or apply to the Kim vehicle. The Kim vehicle is still an "underinsured motor vehicle" even if Cantrill's liability insurance is directly or indirectly available for the benefit of the Batacans to compensate damages incurred by the Batacans in an accident where Cantrill and Kim are jointly and severally liable. The Kim vehicle is therefore "an underinsured motor vehicle" under this policy's definition because it has no insurance which applies to it.[2]

II.

Are Kim and Cantrill jointly and severally liable?
Joint and several liability under our statutory scheme is a term of art which requires an actual judgment against both tortfeasors. RCW 4.22.070(1)(b).[3] There is no joint and several liability under the statute where there is no judgment against the tortfeasors. Arbitration findings apportioning fault between absent parties is not a judgment against those parties. As we recently held, parties not named in the underlying action "are certainly not defendants *827 against whom judgment was entered" for the purposes of joint and several liability. Kottler v. State, 136 Wash.2d 437, 449, 963 P.2d 834 (1998); id. at 447 n. 9, 963 P.2d 834 ("`[A] person is not liable to the plaintiff at all, much less jointly and severally, if he or she has not been named by the plaintiff.'" (quoting Mailloux v. State Farm Mut. Auto. Ins. Co., 76 Wash.App. 507, 513, 887 P.2d 449 (1995))); see also Anderson v. City of Seattle, 123 Wash.2d 847, 852, 873 P.2d 489 (1994) (party must be named defendant to be defendant against whom judgment is entered under RCW 4.22.070(1)(b)). Only where UIM recovery follows an actual judgment taken against both at-fault tortfeasors (and the plaintiff is adjudged without fault) can joint and several liability be a factor. Such is unlikely under this policy of insurance where arbitration normally precedes judgment against the tortfeasor(s). Arbitration is not required by our UIM statuteit is a choice these parties freely incorporated into their insurance contract. By agreeing to this arbitration clause these parties diminished the prospect of joint and several liability under the UIM coverage by contracting to allow a determination of liability and damages caused by the underinsured motorist in an arbitration prior to or in lieu of judgment against the actual tortfeasors.[4]
There are two alternatives open to the insurance company where the insurance contract allows arbitration prior to judgment against potentially liable tortfeasors: (1) the UIM insurance carrier may buy out the claim of its insured and sue the tortfeasors, accepting the prospects of success along with the risk of failure; or (2) the UIM carrier may simply pay its insured those damages attributable to the uninsured or underinsured tortfeasor, retaining the right to proceed against that tortfeasor. Hamilton v. Farmers Ins. Co., 107 Wash.2d 721, 734, 733 P.2d 213 (1987).
Our holding that denial of coverage was improper in this case is compelled by the contract itself which incorporates the statutory standard by requiring Allstate to pay damages the Batacans are "legally entitled to recover as damages from the owner or driver of an underinsured motor vehicle." CP at 59 (UIM endorsement ¶ B.1.). Here, based on this arbitration result, the Batacans would be entitled to recover $30,000 from Kim if Kim's liability were several, $60,000 if it were joint.[5] But Allstate paid nothing.
We have already described a finding of joint and several liability based on what might have happened if an action had been pursued to judgment as "`a tortured reading' " of the statute. Gerrard v. Craig, 122 Wash.2d 288, 296-97 n. 20, 857 P.2d 1033 (1993) (quoting with approval Professor Cornelius J. Peck, Washington's Partial Rejection and Modification of the Common Law Rule of Joint and Several Liability, 62 Wash. L.Rev. 233, 253-54 (1987)). Consistent with the statute's mandate that actual judgment be rendered against both tortfeasors as a condition precedent to joint and several liability, claims for contribution based upon a situation which would otherwise arguably constitute joint and several liability if pursued to judgment also fail absent actual entry of the joint judgment. Kottler, 136 Wash.2d at 447, 963 P.2d 834. See also Washburn v. Beatt Equip. Co., 120 Wash.2d 246, 298, 840 P.2d 860 (1992) (settling parties are not jointly and severally liable as "question of plaintiff's fault is not determined by a trier of fact until close of trial ...."); cf. In re Arbitration of Doyle, 93 Wash.App. 120, 125, 966 P.2d 1279 (1998) ("While the trier of fact may attribute fault to settling, released defendants, such defendants cannot have *828 judgment entered against them within the meaning of RCW 4.22.070(1). Thus, released defendants are not jointly and severally liable.").[6]
Dejbod is also consistent with this view. Dejbod correctly announced the governing principle: "A UIM insurer can subtract a liability policy pursuant to RCW 48.22.030(1) if the person insured by the liability policy is liable to the injured claimant...." Dejbod, 63 Wash.App. at 285, 818 P.2d 608. But Kim had no liability policy, and therefore there is nothing to subtract from Allstate's obligation to compensate the Batacans for the damages Kim caused.
However, in Dejbod the Court of Appeals stated if the liability of the tortfeasors is joint and several "pursuant to RCW 4.22.070(1)" (which requires a judgment), the insurer could deduct the combined total of the two liability coverages. Dejbod, 63 Wash.App. at 292, 818 P.2d 608. Whether liability coverages may be combined, and then set off, under the language of this policy is a question this court has yet to answer and one we need not answer today because there is no joint and several liability here "pursuant to RCW 4.22.070(1)"which would require actual judgment against both tortfeasors. But see Finney v. Farmers Ins. Co., 92 Wash.2d 748, 751-53, 600 P.2d 1272 (1979) (uninsured motorist coverage available where one jointly responsible person is insured but the other is not). The Dejbod court did not purport to dispense with the judgment requirement; in fact it cautioned, "Either or both policies may become applicable when the liability of [the potential joint tortfeasors] is adjudicated," an event which had not happened by the time of the arbitration in Dejbod, 63 Wash.App. at 291, 818 P.2d 608.
In re Arbitration of Fortin, 82 Wash.App. 74, 82, 914 P.2d 1209 (1996), overruled on other grounds by Price v. Farmers Ins. Co., 133 Wash.2d 490, 500 n. 10, 946 P.2d 388 (1997), firmly supports the position advanced by the Batacans as well.
Fortin held the UIM carrier was obligated to directly pay the 50 percent share of an uninsured phantom vehicle (which arguably would have been joint and several if reduced to judgment) because "`[a] court cannot adjudicate the rights of parties who are not actually or constructively before it, with an opportunity to defend or maintain their rights in the action. As a result, Smith [driver with adequate liability insurance] is only severally liable.'" Fortin, 82 Wash. App. at 83, 914 P.2d 1209 (quoting Bayha v. Public Util. Dist. No. 1, 2 Wash.2d 85, 113, 97 P.2d 614 (1939) and citing Mailloux, 76 Wash.App. at 513, 887 P.2d 449).
Nor is In re Arbitration of Doyle, 93 Wash.App. at 125, 966 P.2d 1279, inconsistent with this view as it holds a settlement with a tortfeasor prior to arbitration destroys any possibility of joint and several liability for the purpose of UIM coverage. As a prearbitration settlement eliminates the possibility of joint and several liability for UIM purposes, a postarbitration, but prejudgment, settlement does so as well.
We also note the limitation of liability clause in paragraph E.2.b., which allows a setoff of actual payments "by or for anyone who is legally responsible" (CP at 59), relates to "damages which the insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle...." (Id. at UIM endorsement ¶ E.2.) This, however, does not allow a setoff of Cantrill's payment for the damages she caused against recovery of the damages caused by Kim because Cantrill's payment is "by or for" Cantrill, not Kim. Therefore we hold Allstate wrongfully denied coverage for that portion of the UIM arbitration award attributable to Kim ($30,000).

Conclusion
We enforce, as written, the contract of insurance which Allstate has drafted and these parties have executed. The trial court summary judgment is reversed and this case is remanded for further appropriate proceedings consistent with this opinion. The Batacans *829 shall recover their reasonable attorney fees, having prevailed on the coverage issue. Olympic S.S. Co. v. Centennial Ins. Co., 117 Wash.2d 37, 811 P.2d 673 (1991); Leingang v. Pierce County Med. Bureau, Inc., 131 Wash.2d 133, 147, 930 P.2d 288 (1997).
SMITH, JOHNSON, ALEXANDER, JJ., and DOLLIVER, J. Pro Tem., concur.
GUY, C.J. (dissenting).
This case involves the insurance coverage which is available to parties injured in a motor vehicle accident. The drivers of two of the vehicles, in a three-vehicle accident, were at fault and the fault-free occupants of the third vehicle were injured. One of the at-fault drivers had no insurance, while the other at-fault driver had insurance which exceeded the total damages of the claimants. The injured fault-free claimants had underinsurance coverage through their own insurer. The question before us is whether the primary liability insurer of one of the at-fault drivers or the injured parties' own underinsurance carrier should be responsible to pay the damages to the injured parties. I would hold that the underinsured motorist (UIM) carrier, as the secondary insurer, is not liable to pay UIM benefits when the primary liability insurance applicable to the claimants' damages is sufficient to fully compensate them for all of their damages.
RCW 48.22.030(1) provides:
"Underinsured motor vehicle" means a motor vehicle with respect to the ownership, maintenance, or use of which either no bodily injury or property damage liability bond or insurance policy applies at the time of an accident, or with respect to which the sum of the limits of liability under all bodily injury or property damage liability bonds and insurance policies applicable to a covered person after an accident is less than the applicable damages which the covered person is legally entitled to recover.
In Hamilton v. Farmers Ins. Co., 107 Wash.2d 721, 726-27, 733 P.2d 213 (1987), we explained that "[u]nder these provisions there are two conditions to underinsured motorist coverage: (1) the `covered person' must be legally entitled to recover damages; and (2) damages must exceed the limits of liability under all other applicable insurance policies." (Emphasis added.)
UIM insurance contracts are contracts of indemnity, and we must consider the contractual relationship between the insurer and the insured when deciding UIM issues. Fisher v. Allstate Ins. Co., 136 Wash.2d 240, 244, 961 P.2d 350 (1998). As we have previously explained, notwithstanding its tort-oriented appearance, uninsured and underinsured motorist coverages are most appropriately characterized as two-party contractual relationships between the insurer and the insured. Britton v. Safeco Ins. Co., 104 Wash.2d 518, 529, 707 P.2d 125 (1985). Most important to the issue before us is the fact that liability insurance is primary; UIM is secondary. Greengo v. Public Employees Mut. Ins. Co., 135 Wash.2d 799, 959 P.2d 657 (1998). UIM coverage should supplement, but not supplant, liability insurance. Allstate Ins. Co. v. Dejbod, 63 Wash.App. 278, 284, 818 P.2d 608 (1991); Schrader v. Grange Ins. Ass'n, 83 Wash.App. 662, 666, 922 P.2d 818 (1996), review denied, 131 Wash.2d 1007, 932 P.2d 644, overruled on other grounds by Price v. Farmers Ins. Co., 133 Wash.2d 490, 500 n. 10, 946 P.2d 388 (1997); Dixie Ins. Co. v. Mello, 75 Wash.App. 328, 334, 877 P.2d 740 (1994). As we have recently and repeatedly explained, "UIM insurance provides a second layer of excess insurance coverage that `floats' on top of recovery from other sources for the injured party." Fisher, 136 Wash.2d at 244, 961 P.2d 350 (citing Blackburn v. Safeco Ins. Co., 115 Wash.2d 82, 87, 794 P.2d 1259 (1990), and Elovich v. Nationwide Ins. Co., 104 Wash.2d 543, 549, 707 P.2d 1319 (1985)).
The claimants ask us to allow them to recover UIM benefits because one of the at-fault drivers had no insurance even though the other at-fault driver had more than sufficient insurance to pay all of the claimants' damages. The resolution of this question lies in the determination of whether Cantrill's $300,000 liability policy was available to pay the claimants' $60,000 damages. When applicable primary insurance is sufficient to pay all of the damages, the secondary UIM coverage *830 is not triggered. If Cantrill was jointly and severally liable for all the damages, then there was more than sufficient primary insurance to cover all the damages and no secondary insurance was needed to provide a second layer of protection. Conversely, if Cantrill and Kim were only liable severally, but not jointly, the liability insurer of each would be responsible only for damages attributable to its own insured; in that case, UIM coverage would be available to pay the remainder of the claimants' damages.
The majority argues that Cantrill and Kim were not jointly and severally liable. According to the majority, multiple tortfeasors are always only severally liable following a UIM arbitration. RCW 4.22.070(1) provides in relevant part:
The liability of each defendant shall be several only and shall not be joint except:
....
(b) If the trier of fact determines that the claimant or party suffering bodily injury or incurring property damages was not at fault, the defendants against whom judgment is entered shall be jointly and severally liable for the sum of their proportionate shares of the claimant's total damages.
Because the UIM arbitrators found Kim and Cantrill each 50 percent at fault, they implicitly found the claimants were not at fault. The majority states that even though the Batacans were fault free, the two tortfeasors should not be considered jointly and severally liable because of the language in the tort reform statute which refers to "defendants against whom judgment is entered." In a purely tort litigation setting, only defendants against whom judgment is entered can be held jointly and severally liable. Washburn v. Beatt Equip. Co., 120 Wash.2d 246, 293-94, 840 P.2d 860 (1992); Gerrard v. Craig, 122 Wash.2d 288, 297, 857 P.2d 1033 (1993). However, if we were to rigidly apply this section of the 1986 tort reform act to the UIM arbitration context, in which the question of contractual responsibility would be decided, then there could never be joint and several liability in the UIM context. Judgment cannot be rendered against the nonparty tortfeasor in a contract arbitration between the claimants and their UIM insurer. However, whether the liability of a tortfeasor would have been several, or joint and several, if pursued to judgment, can have a significant effect on what portion of a primary liability insurance policy would be applicable to an accident. I would decline to apply the tort reform act language to the UIM arbitration in a way that would distort the distinction between liability insurance coverage and UIM coverage. Such a holding would have the ultimate effect of changing UIM insurance, which is intended to be secondary excess insurance, into the primary insurance. Even when there is primary liability insurance available to pay all of the damages, the majority believes that the secondary UIM insurance should pay instead. I disagree. This would violate the intent of the UIM statute to provide to insurance buyers a way to purchase an added layer of insurance in the event the at-fault driver was uninsured or underinsured.
The UIM statute is a separate legislative enactment from the tort reform act. "While it has a `tort appearance,' the UIM process is a two-party contractual arrangement between an underinsurer and its insured. Tortfeasors who trigger the need for a UIM claim are not part of the process, and the 1986 Tort Reform Act does not govern the rights and liabilities of the UIM claimant and his underinsurer." THOMAS V. HARRIS, WASHINGTON INSURANCE LAW § 36.3, at 36-5 to 36-6 (1995) (footnote omitted). I would decline to hold that for the purpose of computing how much primary liability insurance is applicable (so that a determination of the amount of UIM coverage needed can be made) joint and several liability can apply only after the claimant has pursued the tortfeasors to final judgment. In the UIM arbitration setting, the arbitrators determine the relative fault of all parties and also determine the claimant's damages. Then, the liability limits of each tortfeasor's insurance are applicable to the extent they would be required to pay that tortfeasor's share of the damages.
I agree with the reasoning of the Court of Appeals in Dejbod, which held that a UIM insurer's offset is determined based on what *831 the claimant would have recovered if he or she had gone to trial against the tortfeasors.
Whether a UIM insurer can subtract a liability policy pursuant to RCW 48.22.030(1) depends on whether the claimant, if he or she diligently pursued the claim against the liability insured to final adjudication, could legally require the liability insurer to pay....
A UIM insurer can subtract a liability policy pursuant to RCW 48.22.030(1) if the person insured by the liability policy is liable to the injured claimant and there is no other reason why the injured claimant could not legally recover from the liability carrier. To so hold is consonant with the purposes of UIM insurance, for if the claimant diligently pursues the claim, he or she will be fully compensated, by a combination of payments from the liability and UIM carriers, for all amounts that he or she is legally entitled to recover from others, up to a maximum of the sum of applicable liability and UIM policy limits. To hold otherwise would vest the UIM claimant with the option of making the UIM carrier the primary rather than secondary indemnitor, in contravention of the desired primary/secondary relationship between carriers, for it would allow the UIM claimant to lawfully demand that the UIM carrier pay damages covered by the liability policy as well as damages in excess of it.
Dejbod, 63 Wash.App. at 284-85, 818 P.2d 608. See also In re Arbitration of Fortin, 82 Wash.App. 74, 82, 914 P.2d 1209 (1996) (to determine the extent to which a liability policy is "applicable," as that term is used in RCW 48.22.030(1), the court must consider the extent to which the claimant, if he or she diligently pursued the claim against the liability insured to final adjudication, could legally require the liability insurer to pay), overruled on other grounds by Price, 133 Wash.2d at 500 n. 10, 946 P.2d 388.
As one scholar explains: "If a UIM claimant is legally entitled to damages against one or more wrongdoer(s), his UIM entitlement will be the lesser of (1) the difference between his net damage entitlement and the sum of all liability insurance that is `applicable' to the claimant's loss, or (2) the policy limit of the claimant's UIM policy." HARRIS, supra, § 36-3 at 36-5. When multiple tortfeasors are found liable in a UIM arbitration, and the claimant is found to be fault free, then for purposes of determining UIM coverage, the tortfeasors must be considered jointly and severally liable. If jointly and severally liable, then the entire limits of whatever liability policies the tortfeasors have are available to pay the claimant's damages. Only if the damages exceed the sum of the primary insurance available will the UIM carrier's secondary insurance be needed. A contrary holding would make UIM arbitrations meaningless and would convert secondary UIM coverage to primary coverage and allow an insurer who sold primary insurance to avoid payment. Since an underinsurance carrier has no right to insist that its UIM insured litigate his claim against the tortfeasors, HARRIS, supra, § 36.2, at 36-5, there would be no way for a UIM carrier to ever establish the fact of joint and several liability so as to show that secondary insurance was unnecessary unless we look to the factual determinations of the UIM arbitration.
As Harris explains, the "applicable" liability insurance is the sum of the amounts of each liability policy necessary to respond to the net damage exposure of the specific tortfeasors insured by each of those policies. Unlike the stated limit of a liability policy, that actual net liability cannot be predicted until the conclusion of a dispositive tort litigation or UIM arbitration. Prior to the 1986 tort reform act, the parties knew that, once an alleged wrongdoer was held to be legally culpable in a tort lawsuit or a UIM arbitration, the full amount of his stated liability limit was "applicable." This was because the 1981 tort reform act codified the long-standing principle that a liable tortfeasor was jointly and severally liable for all of a claimant's net damages. However, the 1986 act changed the structure of the tort system. When a claimant is comparatively negligent, each tortfeasor is severally responsible for only that portion of damages commensurate with his or her percentage of causal fault. Conversely, when a UIM claimant is fault free, an underinsurer can subtract the full stated limit of multiple tortfeasors' policies. In such a factual setting, all wrongdoers are *832 jointly responsible for the sum of their proportionate liability shares. If a claimant is blameless, the proximal negligence of the tortfeasors obligates each of their liability insurers, up to the limit of each of their respective policies, for the full amount of the claimant's net damages. HARRIS, supra, § 36.3, at 36-8 to 36-9. Harris further explains that "[i]n tort cases, the defendants against whom judgment is entered are not jointly and severally responsible for the percentage share of a settling defendant. However, that particular tort rule has no bearing on the UIM subtraction process." HARRIS, supra, § 36.3, at 36-9 n. 53.
The purpose of UIM coverage is to serve as a safety net or secondary source of protection for motorists. Bohme v. PEMCO Mut. Ins. Co., 127 Wash.2d 409, 415, 899 P.2d 787 (1995). If this court were to construe the UIM statute in a way that changed UIM coverage to primary insurance, we would be doing an injustice to the insurance industry and to the consumers of insurance who should be able to purchase UIM coverage by paying premiums for coverage which is secondary, not primary. The entire financial structure of UIM insurance is that of providing a second layer of recovery when the aggregate of the otherwise available liability insurance is not sufficient to pay the damages of the injured motorist. RCW 48.22.030(1). UIM coverage is designed to be used when all other applicable insurance is insufficient to pay damages; it is in the best interest of the public that this excess type of insurance remain secondary to ordinary primary liability insurance so that UIM insurance remains affordable.
In a UIM context, an arbitration award must be treated like a judgment for purposes of RCW 4.22.070(1). The UIM proceeding seeks to determine the amount of the primary insurance available to pay the claimant's damages in order to determine the contractual issue between the UIM insured and the UIM carrier. It does not seek to determine tort liability per se. Since both Kim and Cantrill were liable to the claimants and the claimants were fault free, all of Kim's and all of Cantrill's insurance was available to pay damages. Since the amount of available primary insurance ($300,000) exceeded the total amount of damages ($60,000), the primary insurer, and not the secondary UIM insurer, was responsible to pay the damages.
The claimants also argue that even if they cannot receive $30,000 from their UIM carrier due to the fact that the two tortfeasors were jointly and severally liable, they should be able to collect $6,000 from the UIM carrier since they settled with Safeco (Cantrill's liability insurer) for only $54,000, while the UIM arbitration panel had previously found that their damages were $60,000. I disagree. As we explained in Hamilton, 107 Wash.2d at 727-28, 733 P.2d 213:
Whether the injured insured obtains full recovery of the tortfeasor's liability insurance limits is irrelevant to the determination of underinsurance payments. Underinsured motorist coverage allows the injured insured to recover payment from the underinsurer when the "sum of the limits of liability under all ... insurance policies ... is less than the applicable damages which the covered person is legally entitled to recover." RCW 48.22.030(1). The effect of this provision was correctly stated in a recent opinion of the Attorney General:
If an injured insured settles his claim with the tortfeasor's liability insurer for less than the policy limits, the "underinsured motorist" carrier is entitled to compute its payments to the injured insured as though the policy limits had been paid.
AGO 13 (1981), at 19.

See also Dejbod, 63 Wash.App. at 286-87, 818 P.2d 608; Groves v. Progressive Cas., 50 Wash.App. 133, 137, 747 P.2d 498 (1987). RCW 48.22.030(1) explicitly allows the UIM carrier to subtract the "sum of the limits" of applicable liability policies. As Harris notes, "Hamilton correctly recognized that, once the arbitration panel determined that a tortfeasor was responsible, the full amount of his stated liability limit was `applicable' even if the claimant settled with the tortfeasor's liability insurer for a lesser amount." HARRIS, supra, § 36.3, at 36-6. An injured claimant may not elect to settle with a primary liability insurer for less than full damages and less *833 than policy limits and then proceed against the UIM carrier as if the UIM insurance were the primary insurance.
I would conclude that the superior court correctly granted summary judgment to Allstate and that the Court of Appeals correctly affirmed.
MADSEN, J., and TALMADGE, J., concur.
NOTES
[1] F. CHANGES IN CONDITIONS

....
4. The following Condition is added: ARBITRATION
a. If we and an insured disagree whether the insured is legally entitled to recover damages from the owner or driver of an underinsured motor vehicle or do not agree as to the amount of damages, either party may make a written demand for arbitration....
Clerk's Papers (CP) at 60 (UIM endorsement ¶F.4.a.).
[2] The dissent mistakenly describes Allstate's UIM coverage as "secondary." Dissent at 829. To the contrary, where the tortfeasor has no liability insurance, there is nothing for UIM coverage to be "secondary" to. In that instance UIM coverage is primary.
[3] RCW 4.22.070(1)(b) states the liability of each defendant shall be several only and shall not be joint except

[i]f the trier of fact determines that the claimant or party suffering bodily injury or incurring property damages was not at fault, the defendants against whom judgment is entered shall be jointly and severally liable for the sum of their proportionate shares of the claimants [claimant's] total damages.
(Emphasis added.)
[4] As set forth in Thomas V. Harris, Washington Insurance Law § 36.3, at 36-10 (1995), the situation could be different if the arbitration followed a full litigation against all alleged tortfeasors, or if there were no arbitration clause at all.
[5] The dissent would hold the UIM carrier "is not liable to pay UIM benefits when the primary insurance applicable to the claimants' damages is sufficient to fully compensate them for all of their damages." Dissent at 829. The problem with this statement is three-fold: (1) "primary" liability insurance is applicable to only one tortfeasor, not the other; (2) that liability policy is liable to compensate for damages caused by only the vehicle it insures, not the vehicle it does not; and (3) absent joint liability as per the statute, the liability policy at issue here is available to pay only 50 percent of the damages, not "all of their damages."
[6] This clearly makes sense, as the outcome of a litigation can never be known in advance. See United States v. Armour & Co., 402 U.S. 673, 681, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971); Washburn v. Beatt Equip. Co., 120 Wash.2d 246, 298, 840 P.2d 860 (1992).