[No. 67693-8-I. Division One. December 10, 2012.]

JANETTE LEDING OCHOA, *Appellant*, v. PROGRESSIVE CLASSIC
INSURANCE COMPANY ET AL., *Respondents*.

*Richard B. Kilpatrick* and *Shannon M. Kilpatrick* (of *Kilpatrick Law Group PC*), for appellant.

*Douglas F. Foley* (of *Douglas Foley & Associates PLLC*) and *Vernon S. Finley*, for respondents.

¶1 SPEARMAN, A.C.J. — Janette Ochoa appeals a conclusion of law entered by the trial court in her lawsuit against her underinsured motorist (UIM) carrier, Progressive Classic Insurance Company, The Progressive Corporation, and Progressive Casualty Insurance Company (collectively Progressive). After Ochoa was hit by a car operated by a pizza delivery driver, Progressive denied her UIM claim based on its position that the liability policy of the delivery driver's

employer applied as a setoff before Progressive had to consider her UIM claim. Progressive maintained this position when Ochoa brought suit against it. After the parties stipulated to findings of fact, the trial court agreed with Progressive, entered a conclusion of law accordingly, and certified its order under CR 54(b). The issue we decide is whether the liability limit of the employer's policy applied as a setoff. This turns on whether the at-fault vehicle, at the time of the collision, was an "underinsured motor vehicle" under the UIM statute. We hold, based on the stipulated facts, that it was not, and therefore the trial court did not err.

## FACTS

¶2 This appeal arises from CR 54(b) findings of fact and conclusions of law entered in Ochoa's lawsuit against Progressive, alleging wrongful denial of her UIM claim, insurance bad faith, and violation of the Consumer Protection Act, chapter 19.86 RCW. Ochoa and Progressive each filed motions for summary judgment on the issue of whether the liability policy of the delivery driver's employer applied as a setoff in determining whether the at-fault vehicle was an underinsured motor vehicle. Ochoa argued that only the driver's personal liability policy applied, while Progressive argued that the employer's policy also applied. Both motions were denied.[1] Ochoa, believing the rulings were inconsistent, sought clarification. In response, the trial court urged the parties to stipulate to facts about the accident and damages. The parties stipulated to the following findings of fact, which are verities for purposes of this appeal:

1. [Ochoa] was struck by an auto operated by [Dawnell Smith] on June 24, 1999 when Smith went through a stop sign.

2. Smith was the only driver at fault in the collision.

---

[1] The motions were heard by different judges.

3. [Ochoa] suffered injuries in the collision and retained attorney Ben Wells of Wells & Hammer to represent her.

4. At the time of this accident, Smith was delivering pizza for Domino's Pizza, Eastside Express in her own vehicle.

5. Smith carried a State Farm Mutual Automobile Insurance Company policy that applied to this accident. It provided liability coverage in the amount of $50,000 for each person and $100,000 for each occurrence.

6. Evanston Insurance Company had a policy of insurance with limits of $1,500,000 which insured Eastside Express, Inc. for its liability for any non-owned vehicle driven on the job by an employee of Eastside Express, Inc.

7. The Evanston policy was applicable to the collision and the policy covered the vehicle [Smith] was driving at the time of the incident since [Smith] owned the vehicle and [Smith] was operating the vehicle within the course and scope of her employment with Eastside Express.[2] [Smith] was not an insured under the Evanston policy.

8. [Ochoa] had a policy of insurance with Progressive Classic Insurance Company which included Underinsured Motorist coverage for Ochoa in the amount of $50,000. . . .

9. Ochoa made claims with Smith and Progressive.

10. On March 15, 2001, [Ochoa] provided Progressive the opportunity to buy out the tentative settlement with Smith for the State Farm limits of $50,000. Progressive declined by fax on March 20, 2001.

11. On March 21, 2001 [Wells] had Ochoa sign a release provided by State Farm and settled all claims against Smith and State Farm for $50,000.

12. On March 21, 2001 Wells wrote Progressive providing a copy of the State Farm settlement documents and renewed the UIM claim. After confirming the Evanston policy applied, Progressive thereafter took the position that to have a UIM

---

[2] The policy stated:

We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto, in excess of the deductible amount stated in the declarations.

claim, the value of Ochoa's damages had to exceed the amount of both the State Farm policy and the Evanston policy combined, regardless of whether the Evanston policy covered Smith as an insured.

13. Soon after providing the State Farm settlement information to Progressive, Wells wrote to Domino's Pizza Eastside Express to assert a claim for Ochoa. No offer was made.

14. Wells withdrew from Ochoa's representation by June 21, 2001.

15. The release from State Farm Wells had Ochoa sign to settle with Smith had language that Domino's Pizza Eastside Express claimed released it from any claim. . . .

16. In June 2002, Ochoa sued and served Domino's Pizza Eastside Express. [Wells] and Hammer & Wells were also named for any damages that may have been lost from Eastside Express by the release but the attorney and law firm were not served. Ochoa served Wells in February 2004.

17. When the dispute on the issue of the threshold for a UIM claim continued [Ochoa] amended the complaint and added Progressive as a defendant in June 2004.

18. In January 2005 Ochoa settled her claims against Eastside Express for $25,000 and against [Wells] and Hammer & Wells for $32,500 and both defendants were dismissed. Progressive was the only remaining defendant.[3] [Ochoa's] recovery at that point was $107,500.

19. Ochoa has asserted the value of her damages always exceeded the $50,000 limits available to her from the State Farm policy and that her damages most likely exceeded $107,500. Ochoa always agreed, and it is so found, that her claims do not remotely exceed $1,550,000.

Clerk's Papers (CP) at 323-26. Based on these facts, the trial court entered this conclusion of law: "The Evanston policy liability limit serves as [a setoff[4]] for the threshold for

---

[3] The Eastside settlement was paid by Evanston.

[4] We use the term "setoff" instead of "offset," the term used by the trial court. A "setoff" refers to sums paid to the insured by another party and is the appropriate term to use here. *Hamm v. State Farm Mut. Auto. Ins. Co.*, 151 Wn.2d 303, 308 n.2,

Ochoa's UIM claim regarding Dawnell Smith's liability." The court certified its order pursuant to CR 54(b). Ochoa filed a notice of direct appeal to the Washington Supreme Court, which declined review and transferred the case to this court.

## DISCUSSION

¶3 The sole issue we decide is whether the trial court properly concluded that the Evanston policy's liability limit applies as a setoff. This issue depends on whether Smith's car was an underinsured motor vehicle, which in turn depends on whether the Evanston policy is an "applicable" policy under the UIM statute, RCW 48.22.030.[5] We hold, based on the parties' stipulated facts, that the Evanston policy was applicable, Smith's car was not an underinsured motor vehicle at the time of the accident, and the trial court properly concluded that the limits of the Evanston policy applied as a setoff.

### UIM Setoff

¶4 We review conclusions of law de novo. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002). The interpretation of statutes and insurance policies involves questions of law reviewed de novo. *Dot Foods, Inc. v. Dep't of Revenue*, 166 Wn.2d 912, 919, 215 P.3d 185 (2009) (statutes); *Polygon Nw. Co. v. Am. Nat'l Fire Ins. Co.*, 143 Wn. App. 753, 766, 189 P.3d 777 (2008) (insurance policies). The primary goal of statutory construction is to carry out legislative intent. *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001). If statutory language is clear on its face, that plain meaning must be given effect. *State v. Costich*, 152 Wn.2d 463, 470, 98 P.3d 795 (2004).

---

88 P.3d 395 (2004). An "offset" is credit to which an insurer is entitled for payments made under one coverage against claims made under another coverage within the same policy. *Id.* (quoting *Winters v. State Far Mut. Auto. Ins. Co.*, 144 Wn.2d 869, 31 P.3d 1164 (2001)).

[5] RCW 48.22.030 has been amended several times since the 1999 collision, but the language in sections (1) and (2) did not change.

■ ¶5 Under RCW 48.22.030(1),

"Underinsured motor vehicle" means a motor vehicle with respect to the ownership, maintenance, or use of which either no bodily injury or property damage liability bond or insurance policy applies at the time of an accident, or with respect to which the sum of the limits of liability under all bodily injury or property damage liability bonds and insurance policies applicable to a covered person after an accident is less than the applicable damages which the covered person is legally entitled to recover.[6]

One purpose of the UIM statute is to provide a secondary layer of coverage—a safety net—that "floats" on top of liability coverage. *Bohme v. Pemco Mut. Ins. Co.*, 127 Wn.2d 409, 414-15, 899 P.2d 787 (1995). The statute allows the injured party to recover the damages that he or she would have received had the tortfeasor maintained liability insurance as broad as the injured party's UIM limits. *Hamilton v. Farmers Ins. Co. of Wash.*, 107 Wn.2d 721, 732, 733 P.2d 213 (1987).

¶6 Ochoa argues that under RCW 48.22.030(1), applicable policies are those that apply to the ownership, maintenance, or use of the vehicle, each considered separately, such that if the policy or policies applicable to any one of these three categories is insufficient, a motor vehicle is underinsured. Accordingly, she contends, Smith's vehicle was underinsured because the only liability policy covering Smith, the owner of the vehicle, was the State Farm policy; Smith was not a named insured under the Evanston policy.

---

[6] The definition of "underinsured motor vehicle" under the Progressive policy is substantially the same as the statutory definition. The policy defines it, in pertinent part, as a vehicle "to which a liability bond or policy applies at the time of the accident, but the sum of the limits of liability under all applicable bonds and policies is less than the damages which the insured person is entitled to recover." CP at 367. Under both RCW 48.22.030(1) and the policy, the key is whether a liability policy is "applicable." Where the parties focus on the statutory language and do not argue that the policy definition is broader than the statute's, and where UIM insurers cannot contractually reduce the statutorily mandated UIM insurance requirement through policy language, *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 531, 707 P.2d 125 (1985), we focus on the statutory definition.

Ochoa cites *Finney v. Farmers Insurance Co. of Washington*, 92 Wn.2d 748, 600 P.2d 1272 (1979) and *Allstate Insurance Co. v. Batacan*, 139 Wn.2d 443, 986 P.2d 823 (1999) to support her position. Eastside, on the other hand, argues that the trial court correctly applied the plain language of RCW 48.22.030(1) in determining that Smith's car was not an underinsured motor vehicle. It contends that all policies insuring the ownership, maintenance, or use of the vehicle apply to determine setoff. Simply stated, Ochoa maintains that the UIM statute precludes application of the Evanston policy, while Progressive maintains that the Evanston policy limits automatically apply under the statute.

 ¶7 In *Allstate Insurance Co. v. Dejbod*, 63 Wn. App. 278, 818 P.2d 608 (1991), we addressed the questions at the heart of this appeal: (1) After an accident, what liability policies are "applicable" to a UIM claimant within the meaning of RCW 48.22.030(1) and (2) when a liability policy is "applicable," to what extent is it applicable? *Id.* at 284. In answering the first question, we held, "A UIM insurer can subtract a liability policy pursuant to RCW 48.22.030(1) if the person insured by the liability policy is liable to the injured claimant and there is no other reason why the injured claimant could not legally recover from the liability carrier." *Id.* at 285. More specifically, this depends on "whether the claimant, if he or she diligently pursued the claim against the liability insured to final adjudication, could legally require the liability insurer to pay." *Id.* at 284-85. In answering the second question, we stated, "The overriding principle is the same as before: A liability policy is applicable to the extent that the claimant, if he or she diligently pursued the claim to final adjudication, could legally require the liability insurer to pay." *Id.* at 286.

¶8 Before we apply *Dejbod* to the facts at hand, we address Ochoa's contention that the UIM statute precludes application of the Evanston policy. Ochoa argues that under RCW 48.22.030(1), applicable policies are those that apply to either the ownership, *or* the maintenance, *or* the use of

the vehicle. We reject Ochoa's reading of RCW 48.22.030(1) because it is inconsistent with the statute's plain, unambiguous language.

 ¶9 RCW 48.22.030(1) addresses two situations in defining an underinsured motor vehicle: (1) where no liability policy applies or (2) where at least one liability policy applies. The situations are addressed as follows, so that " '[u]nderinsured motor vehicle' means a motor vehicle"

> with respect to the ownership, maintenance, or use of which either no bodily injury or property damage liability bond or insurance policy applies at the time of an accident

*or*

> with respect to which the sum of the limits of liability under all bodily injury or property damage liability bonds and insurance policies applicable to a covered person after an accident is less than the applicable damages which the covered person is legally entitled to recover.

RCW 48.22.030(1). Ochoa argues the phrase "with respect to the ownership, maintenance, or use of which" applies to the second situation. But the statute plainly applies that phrase only to the first situation, where *no* liability policy applies at the time of an accident. Therefore, in this case, where there is at least one undisputedly applicable policy (Smith's State Farm policy), Smith's vehicle is underinsured only if "the sum of the limits of liability under all bodily injury or property damage liability bonds and insurance policies applicable to a covered person after an accident is less than the applicable damages which the covered person is legally entitled to recover."[7] RCW 48.22.030(1).

---

[7] Ochoa also argues that RCW 48.22.030(1) is "tortfeasor-centric" and looks only to policies that insure an individual tortfeasor, not the vehicle. But this argument is inconsistent with the plain language of the statute, which defines an "underinsured motor vehicle," not an underinsured motorist.

■ ¶10 Ochoa's point that Smith is not an "insured" under the Evanston policy is irrelevant. The UIM statute looks to what policies are "applicable to a covered person after an accident . . . ." Whether Smith was insured by the Evanston policy does not determine whether the policy was applicable to compensate *Ochoa* after the accident. Though the Evanston policy insured Eastside, not Smith, the policy insured any sums Eastside legally had to pay because of an accident, and resulting from the ownership, maintenance, or use of any nonowned motor vehicle while used to deliver food on behalf of Eastside. Assuming the accident was a covered event under the Evanston policy, Ochoa could have submitted a claim and recovered under that policy. She does not argue to the contrary, contending only that she was forced to compromise her claim because of the release she signed with Smith.[8]

¶11 Furthermore, the case law cited by Ochoa does not support her interpretation of the UIM statute. She relies on *Finney* for the proposition that UIM coverage exists where any of two or more joint and severally liable tortfeasors is underinsured. But that case is not controlling here. *Finney* involved the predecessor statute to RCW 48.22.030. The predecessor statute related only to uninsured motorists and did not provide a definition for "underinsured motor vehicle," which the present statute does.[9] Furthermore, *Finney* is factually distinguishable.[10] After the plaintiffs' daughter was killed in an accident caused by the driver of

---

[8] Ochoa does not claim that Progressive's actions placed her in this position.

[9] The uninsured motorist statute was enacted in 1967. *See* Laws of 1967, ch. 150, § 27. The statute was rewritten by the 1980 amendments, which added coverage for underinsured motorists. *See* Laws of 1980, ch. 117, § 1.

[10] On appeal, the *Finney* court addressed the issue "whether a vehicle is 'uninsured' within the meaning of the statute and the policy where the operator has liability insurance, but the owner does not." *Finney*, 92 Wn.2d at 751. Farmers argued that the plaintiffs could recover under the uninsured motorist policy only if both the owner and the operator of the car were uninsured. The court disagreed, holding that the legislature intended to provide uninsured motorist protection where either one of the responsible parties lacks insurance coverage. *Id.* at 752-53. It wrote:

another car, they sued the estates of the driver and the owner of the at-fault car (the owner was a passenger during the accident). The plaintiffs settled with the estate of the driver and actually obtained a judgment against the estate of the owner, who had liability insurance, following a trial. But the plaintiffs nonetheless could not collect from the estate of the owner because the insurer denied coverage and refused to pay. The plaintiffs then sought uninsured motorist benefits from Farmers, who denied their claims. *Finney*, 92 Wn.2d at 749-50.

¶12 Here, Ochoa sought to recover from Eastside, but not until after she released Smith, and she eventually settled with (but did not obtain a judgment against) Eastside. It is unclear whether, had Ochoa not signed the release, Evanston would have denied her claim. Furthermore, Smith was both owner and operator of the car; the only question is whether the Evanston policy covered Smith's car and was available to compensate Ochoa.

¶13 Ochoa also relies on *Batacan* for the proposition that the Washington Supreme Court disapproved of aggregating multiple tortfeasors' liability coverages. But *Batacan* involved two at-fault vehicles and the issue of whether setoff could be based on the joint and several liability of the drivers of those vehicles. *Batacan*, 139 Wn.2d at 445-48. In defining whether one of the at-fault vehicles was underinsured, the court held that the *other* driver's liability policy did not apply to that vehicle. *Id.* at 448-49. Here, there was one at-fault vehicle, and the only issue is whether the policy of the driver's employer applied to the vehicle. Setoff based on joint and several liability is a distinct issue from whether a liability policy applies for purposes of defining whether a single car is an underinsured motor vehicle.

---

We hold that, where a negligent owner of an automobile is not covered by liability insurance, even though the operator does have insurance coverage, the motor vehicle is "uninsured" for purposes of RCW 48.22.030. The uninsured motorist clause in plaintiffs' policy with Farmers provides protection to them, and they are entitled to recover under it.

*Id.* at 753.

¶14 Having explained why Ochoa's arguments as to why the statute precludes application of the Evanston policy are not well taken, we now turn back to an analysis under *Dejbod*. The question, in determining whether the Evanston policy is applicable, is this: Could Ochoa, if she had diligently pursued the claim against Eastside to final adjudication, legally require Evanston to pay? To the extent that Progressive assumes that Smith's liability automatically triggered Eastside's vicarious liability and that the Evanston policy limit automatically applied as a setoff, Progressive is incorrect. Here, Smith's fault was undisputed. But when Ochoa brought suit against Eastside, Eastside denied that Smith was acting within the scope of her employment and for the benefit of Eastside. CP at 303 (denying paragraph 1.7), 317 (paragraph 1.7). Whether the Evanston policy applies depends on whether *Eastside* was liable to Ochoa; if Ochoa could not have proved that Smith was acting in the scope of her employment and any other facts needed to show vicarious liability, the accident was not a covered event under the Evanston policy and the policy was not applicable. The result would have been that the only applicable liability policy was Smith's State Farm policy, with its $50,000 limit, and Smith's car would have been underinsured.

¶15 Nonetheless, while denying that Smith was acting in the scope of her employment, Eastside settled with Ochoa for $25,000, which was paid by Evanston. But that a liability insurer "voluntarily settles with or pays an injured claimant does not, without more, establish that the carrier's insured is liable to the claimant, or that the insured's liability policy is 'applicable' to the claimant within the meaning of RCW 48.22.030(1)." *Dejbod*, 63 Wn. App. at 286. "Settlements and payments are often made for reasons only tangentially related to the liability of the insured, including avoidance of the costs of litigation, and they are not equiva-

lent to an adjudication of liability through litigation or arbitration." *Id.* (citation omitted); *Batacan*, 139 Wn.2d at 450-51. Therefore, the Evanston policy is not applicable simply because Evanston paid a settlement on behalf of Eastside.

¶16 However, this appeal is before us on stipulated facts. As between Ochoa and Progressive, for purposes of determining the UIM setoff, the stipulated facts provide, "[T]he Evanston policy was applicable to the collision and the policy covered the vehicle Dawnell Smith was driving at the time of the incident since Dawnell Smith owned the vehicle and Dawnell Smith was operating the vehicle within the course and scope of her employment with Eastside Express." The parties agree that the accident was a covered event under the Evanston policy and therefore agree that Ochoa, had she diligently pursued the claim against Eastside to final adjudication, could have legally required Eastside to pay.

¶17 The remaining issue is what portion of the Evanston policy applied as a setoff. "Once 'applicable' within the meaning of RCW 48.22.030(1), a liability policy is applicable to the extent of its limits, and not merely to the extent of whatever payment the liability insurer negotiated with the injured claimant." *Dejbod*, 63 Wn. App. at 286-87. Therefore, if a liability insurer settles with a UIM claimant, the UIM carrier is "allowed to credit the full amount of the tortfeasor's liability coverage against the insured's damages." *Id.* at 287. Here, where the Evanston policy is "applicable" under the parties' stipulated facts, the policy limit applies as a setoff because Ochoa settled with Evanston. Furthermore, Ochoa stipulated that her damages do not exceed $1,550,000, the combined limits of the State Farm and Evanston policies. The result is that the Smith vehicle is not an underinsured motor vehicle under RCW 48.22.030(1).

*Attorney Fees on Appeal*

¶18 Ochoa requests an award of attorney's fees and costs pursuant to RAP 18.1 and *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 53, 811 P.2d 673 (1991). The request is denied.

¶19 Affirmed.

GROSSE and COX, JJ., concur.

Review denied at 177 Wn.2d 1003 (2013).